Gary Trachten (GT5480)
Alisa L. Silverstein (AS2926)
**KUDMAN TRACHTEN ALOE LLP**
350 Fifth Avenue, Suite 4400
New York, New York  10118
(212) 868-1010
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

| | |
|---|---|
| SAMUEL A. JUDD, | ECF Case |
| | 07 Civ. 7932 (GEL)(HP) |
| Plaintiff, | |
| -against- | **COMPLAINT AND DEMAND FOR TRIAL BY JURY** |
| TAKE-TWO INTERACTIVE SOFTWARE, INC., | |
| Defendant. | |

----------------------------------------------------------------X

The plaintiff, Samuel A. Judd, by and through his attorneys, Kudman Trachten Aloe LLP, complains against the defendant as follows:

**PARTIES, JURISDICTION AND VENUE**

1.  The plaintiff, Samuel A. Judd ("Judd"), is a citizen of the State of Connecticut.

2.  The defendant, Take-Two Interactive Software, Inc., ("Take-Two"), is a Delaware Corporation having its principal place of business in the City of New York, County of New York, in this Court's judicial district.

3.  The amount in controversy in this action is in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

4. The subject matter jurisdiction of this Court over this action is predicated on 28 U.S.C. §1332(a)(diversity of citizenship).

5. This Court's personal jurisdiction over Take-Two is predicated on CPLR §301.

6. This action is properly venued in this Court pursuant to 28 U.S.C. §1391(a)(1) and (2) in that the defendant resides in this judicial district and a substantial part (if not all) of the events or omissions giving rise to the claims made herein occurred in this judicial district.

## BACKGROUND FACTS

7. The plaintiff Judd was employed by the defendant Take-Two pursuant to a written contract dated as of July 30, 2004 ("the Employment Agreement") having a stated term of three years.

8. The Employment Agreement provided that Judd would have the title, duties and responsibilities of Senior Vice President of Planning and Administration, reporting to Take-Two's Chief Executive Officer or his designee, and it specifically identified Judd's areas of responsibility as in the areas of (a) business planning, (b) strategy development, (c) assistance with acquisition due diligence, (d) procurement, and (e) information technology.

9. The Employment Agreement afforded Take-Two a limited degree of flexibility for modifying Judd's duties and responsibilities, subject to the express proviso that:

> Such modified duties and responsibilities shall be reasonably related to [Judd's] position, and shall not result in a material diminution of [Judd's] position, responsibilities or authority.

10. In addition to providing for Judd's rights to other elements of compensation (e.g., salary, stock options, benefits), the Employment Agreement expressly provided:

> [Judd] *shall be entitled to receive* a cash bonus ("Bonus"), with a target payment ("Target Bonus") of $275,000 in respect to each fiscal year… based on quantitative and qualitative performance targets for each fiscal year to be mutually agree upon by [Judd] and [Take-Two].

(Emphasis added.)

11. At no time before or during the term of the Employment Agreement did Take-Two propose, request or suggest that Judd propose any performance targets for basing thereon the Bonus to which Judd was contractually "entitled to receive."

12. At no time before or during the term of the Employment Agreement did Take-Two establish any performance targets for basing thereon the Bonus to which Judd was contractually "entitled to receive."

13. At no time before or during the term of the Employment Agreement did Take-Two communicate to Judd any performance targets for basing thereon the Bonus to which Judd was contractually "entitled to receive."

14. Take-Two made a bonus payment to Judd of approximately $55,000 with respect to the partial employment year that fell within the first fiscal year (ending October 31, 2004) of the employment term.

15. Take-Two thereafter failed to make any cash bonus payments to Judd.

16. On or about March 29, 2007, there was an election of the board of directors (the "Board") of Take-Two resulting in a change in the majority of the Board.

17. By reason of the foregoing election, there was a "Change in Control" of Take-Two within the meaning of the Employment Agreement.

18. In the period leading up to the Change in Control and continuing in the period that followed, Take-Two made modifications to Judd's duties, responsibilities and authority.

19. Take-Two's aforementioned modifications resulted in a material diminution of Judd's position, responsibilities and authority.

20. More specifically, Take-Two took away Judd's prior responsibilities and authority with respect to information technology, procurement, insurance and strategic and business planning.

21. In May, 2007, in discussing Judd's anticipated continuing role with company, Take-Two's Acting CEO, Ben Feder, told Judd "there is no box for you."

22. In early June, 2007, Take-Two distributed to executive personnel a new organization chart, presented as then currently effective, that omitted Judd and his position and redistributed his responsibilities among other executive personnel.

23. The Employment Agreement expressly provides for Judd's right to terminate his employment prior to the end of term, for Good Reason. Good Reason is defined to mean, among other triggers:

> the material diminution in [Judd's] duties, reporting relationship, position, responsibilities or authority. . . .

The Good Reason provision also provided a contractual precondition that Judd first provide Take-Two with thirty (30) days' written notice of the nature of the Good Reason, affording Take-Two an opportunity to cure the circumstances constituting Good Reason.

24.     By letter dated and sent on May 30, 2007, Judd gave Take-Two the required notice of the basis for his termination for Good Reason.

25.     Take-Two thereafter failed to correct the Good Reason circumstances, *i.e.*, the diminution in Judd's duties, reporting relationship, position, responsibilities or authority.

26.     As the expiration of the thirty-day notice period drew close, Judd reminded Take-Two that he intended to terminate his employment for Good Reason at the close of business on June 29, 2007.

27.     In follow up and pursuant to his prior notice of his intention to do so, on June 29, 2007, Judd ceased providing employment services to Take-Two, and on that day returned to the company the Take-Two property that had earlier been in his care and custody.

28.     The Employment Agreement provides that upon a termination of the employment relationship for Good Reason during the term, Judd is entitled to the payment and benefits as are provided therein for a termination without cause.

**FOR THE FIRST CAUSE OF ACTION
(BREACH OF CONTRACT – BONUS)**

29.     Judd repeats and realleges paragraphs 1 through 28 above as if fully restated herein.

30.     At times relevant herein, Take-Two made a decision, or a series of decisions, that it would not pay Judd any past or future Bonuses, other than to the extent that it had made a Bonus payment to him for a portion of 2004.

31.     Take-Two's failure to engage Judd with regard to a mutual establishment of performance targets that would serve as base for awarding Bonus compensation to Judd

was a consequence of Take-Two's decision, or series of decisions, not to pay Judd Bonus for past (except as actually paid) or future services.

32.     Take-Two's conduct in deciding to deprive Judd of the opportunity to earn a Bonus in accordance with performance targets to be mutually agreed upon was undertaken in bad faith and for the purpose of depriving Judd of the material fruits of his contract with Take-Two.

33.     In the context of (a) Judd's having been expressly "entitled" (as distinct from eligible) to receive a cash a Bonus under the Employment Agreement, (b) the Employment Agreement's providing a specified Target Bonus sum as affording a reasonable estimate of the expected Bonus sums to be paid pursuant to that entitlement, and (c) the willful failure of Take-Two to engage Judd with regard to establishing performance targets which (along with the specified Bonus Target amount) would afford a basis for good faith calculation of the payment that would fulfill Judd's entitlement to a cash Bonus, Take-Two's repeated failures to pay Judd a Bonus in an amount at least equal to the Target Bonus constituted a material breach of the Employment Agreement as that Agreement is informed by the implied-in-law covenant of good faith and fair dealing inherent therein.

34.     As a result of the aforementioned breach by Take-Two, Judd has been damaged in the amount of no less than seven hundred seventy thousand dollars ($770,000.00) plus pre-judgment interest thereon.

### FOR A SECOND CAUSE OF ACTION
### (<u>BREACH OF CONTRACT – TERMINATION PAY</u>)

35.     Judd repeats and realleges paragraphs 1 through 34 above as if fully restated herein.

36.     Pursuant to the Employment Agreement, upon his Good Reason termination within nine (9) months of a change in control, based on circumstances that constitute also a material breach of that Agreement, Judd became discharged from any further obligations under the Agreement and entitled to receive from Take-Two:

(a)     twelve (12) months' salary;

(b)     the average of the Bonuses that he was paid (or, but for Take-Two's breach, he would have been) for the prior two fiscal years; and

(c)     the immediate vesting of all the options and restricted shares of stock that had therefore been granted, along with immediate rights of exercise.

37.     Despite demand, Take-Two has declined to make any payments, or to vest or make exercisable any equity rights, on account of Judd's Good Reason termination.

38.     As a result thereof, Judd has been damaged in the sum of not less than six hundred sixty thousand dollars ($660,000.00), plus prejudgment interest, and has unlawfully been deprived of certain rights to accelerate the vesting and exercise of certain options and equity interests in Take-Two.

**WHEREFORE**, Samuel A. Judd demands **TRIAL BY JURY** of the factual issues presented in this Complaint, and further demands judgment:

(a)     On the First Cause of Action, for the sum of seven hundred seventy thousand dollars ($770,000.00) plus pre-judgment interest at the statutory rate of 9%; plus

7

(b) On the Second Cause of Action, for the sum of six hundred sixty thousand dollars ($660,000.00) plus pre-judgment interest at the statutory rate of 9%; plus

(c) On the Second Cause of Action, an Order from this Court directing that all of the options and restricted shares of stock granted by the defendant to the plaintiff be deemed to have vested and become immediately exercisable as of June 30, 2007; and

(d) On the Second Cause of Action, for an award of damages, as may be determined by the trier of fact arising from the defendant's, through trial, having failed to treat all of the plaintiff's awarded options and restricted stock grants as fully vested and exercisable; plus

(e) On all causes, for an award of the plaintiff's recoverable costs and expenses of this Action; plus

(f) Post-judgment interest; plus

(g) All such other relief as the Court deems appropriate, just and proper.

Dated: September 10, 2007

        **KUDMAN TRACHTEN ALOE LLP**
        *Attorneys for Plaintiff*

    By:    /s/ Gary Trachten_____
           Gary Trachten (GT5480)