Gary Trachten (GT5480)
Alisa L. Silverstein (AS2926)
**KUDMAN TRACHTEN ALOE LLP**
350 Fifth Avenue, Suite 4400
New York, New York 10118
(212) 868-1010
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SAMUEL A. JUDD,

                    Plaintiff,

      -against-

TAKE-TWO INTERACTIVE SOFTWARE, INC.,

                    Defendant.
------------------------------------------------------------X

ECF Case
07 Civ. 7932 (GEL)(HP)

**DECLARATION OF GARY TRACHTEN IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL ETC.**

**GARY TRACHTEN** declares under penalty of perjury, pursuant to 28 U.S.C. §1746, as follows:

1. I am a member of Kudman Trachten Aloe LLP, attorneys for the plaintiff in the above captioned action. I make this Declaration in support of the plaintiff's motion for an order (a) compelling the defendant to make disclosure, (b) deeming all objections thereto waived, (c) requiring the defendant to pay the plaintiff's expenses on this motion (d) providing for such other sanctions that the Court deems warranted, and (e) revising the pre-trial schedule to account for the delays occasioned by the defendant's continuing non-compliance with its disclosure obligations, as more fully shown below. As more fully demonstrated herein, I certify that I have repeatedly attempted to in good faith confer with the defendant's attorneys in an effort to obtain due disclosure without court action.

**Procedural History and Background**

2.  I incorporate by reference the joint letter of counsel for both parties, dated March 27, 2008, which we delivered to the Court on that day, a copy of which is annexed hereto as Exhibit A. I bring to the Court's attention the plaintiff's request made in the first paragraph of that letter that the Court schedule an informal discovery conference pursuant to Local Rule 37.2. We also bring the Court's attention to the defendant's response insofar as it pled, without evidentiary support, that although it had "necessarily been forced to divert its limited resources to the attention of continuing viability of Take-Two as a corporate entity[1]," some "additional time will allow Defendant to re-shift and re-prioritize its focus, and give this matter the attention it, unquestionably deserves." (pp. 12 – 13). As demonstrated below, more than a month later, the defendant still gives scant attention to its discovery obligations in this case. Finally, we reiterate, (as reported in that letter, p. 3) that the defendant had served *no* response to the plaintiff's interrogatories served by hand on December 28, 2007, *nor any* response to the plaintiff's first request for production served by hand on December 28, 2007 until February 22, 2008, *i.e.* days *after* the stipulated-to extension date for when complete responses were to be due. (The responses were dated, or backdated, to appear as if they were timely.)

3.  In response to the aforementioned March 27, 2008 letter, this Court issued an April 3, 2008 Opinion and Order, *Judd v. Take-Two Interactive Software, Inc.*, 2008 WL 906706, copy annexed as Exhibit B. As reflected therein, the Court did not grant the

---

[1] This readily appears to be a disingenuous and melodramatic statement given that, even as described by the defendant, what is at stake in the matter that has usurped its attention is not the viability of the company but rather its ownership and control. (As far as *viability* and "limited resources" are concerned, we note that New York Times reported on April 29, 2008 that in the following two weeks five million (5,000,000) consumers are expected to spend $60 each to purchase Take-Two's new release of its Grand Theft Auto IV video game.)

2

plaintiff's request for a conference; hence, the instant motion is authorized under Local Rule 37.2. Nor did the Court issue an order compelling defendant to provide past due discovery by any date certain. Rather, the Court afforded the defendant trust that its commitment to re-arrange its priorities was in good faith, could be counted on, and would suffice to move the case forward and resolve the discovery gap. The Court's April 3, 2008 resolution of the defendant's discovery delays (which resolution in its time we respect) was as follows:

> Defendant appears to understand that, whatever excuses it may have had for its actions (or, more accurately, non-actions,) now is the time to "give this matter the attention that it unquestionably deserves." ... On the assumption that defendant will now make this case a priority, the discovery process will be extended for a period of 6 weeks.

*Id.* at *1.

4.  The plaintiff now respectfully submits that the facts shown below demonstrate that the defendant has come to abuse the Court's trust and that much stronger judicial action is now required to assure appropriate compliance with the governing rules.

**The Discovery Demands and Responses at Issue**

5.  At issue on this motion are the defendant's responses to the Plaintiff's First Set of Interrogatories, annexed hereto as Exhibit C, and the Plaintiff's First Request for Production, Exhibit D, both of which were served by hand on December 28, 2007. Also annexed hereto are Defendant's Responses and Objections to Plaintiff's First Set of Interrogatories, at Exhibit E, and Defendant's Responses and Objections to Plaintiff's First Request for Production, Exhibit F.

3

**Post-March 27, 2008 Events**

6. Upon submitting the March 27, 2008 letter to the Court, the plaintiff did not wait for a judicial response before making further efforts to bridge the discovery gap by engaging opposition counsel on the issue and inviting comment and response. Thus, by a 4+ page letter to Kathleen M. McKenna faxed on March 31, 2008, copy annexed as Exhibit G, I raised the plaintiff's protest of the defendant's (a) employing a long and broad list of "general objections" and apparently superfluous objection that obfuscate whether responses are complete, and (b) reliance on Fed.R.Evid. 408 as a shield against producing discovery despite that the Rule is one governing evidentiary admissibility, not discoverability. As the Court will note upon review of the letter, I provided therein citations to Rules and case law to support the plaintiff's position set forth.

In an April 3, 2008 letter sent after her receipt of the Court's decision, copy annexed as Exhibit H, Ms. McKenna replied to my aforementioned letter as follows:

> Finally, although we do not agree with all of the conclusions reached by you in your March 31, 2008 letter, we will also serve revised interrogatory and documentary responses.

*Despite that written commitment, the defendant has not served any such revised interrogatory or documentary responses. Nor has adverse counsel communicated with this office in their regard.*

7. In contrast, the defendant did nothing to address the then outstanding issue of trying to resolve the matter of the confidentiality stipulation during the pendency of the Court's response to the March 27, 2008 letter. Then, on April 3, 2008, the defendant acquiesced (see Exhibit H) in the very stipulation that I had proposed more than two weeks earlier, providing no explanation for why it took a full two weeks to say "yes" and

4

start producing the purportedly confidential documents. It appears that at least some substantial number of documents had been at least nearly ready to go, subject to reaching agreement on the stipulation, as some production was forthcoming the following day. The confidentiality stipulation was signed and filed on April 4, 2008 (and "So Ordered" on April 9, 2008).

8. On April 4, 2008, we received documents under cover of a letter from defendant's attorney Ian C. Schaefer, a copy of which is annexed hereto as Exhibit I. Mr. Schaefer's letter indicated that the documents produced are responsive – though not stated to be *fully* responsive – to Request nos. 1, 2, 5, 6, 9, 11, 23, 25, 26 and 27, *i.e. responsive to only one-third of the thirty (30) requests*. (Many of the documents that were produced were actually never even requested. Thus, the defendant produced employee Form W-4s, COBRA notices, new employee checklists, etc. in personnel files that were not requested. I recognize that the over-inclusion might reasonably have served a defendant convenience interest.)

9. Mr. Schaefer's aforementioned April 4, 2008 letter also noted that, with respect to e-discovery, the defendant was then revising its search terms in an effort to exclude the review of voluminous, irrelevant materials, noting search terms that it intended to utilize toward that end. However, since then, *the defendant has neither produced any e-discovery, nor has its counsel further communicated with me in its regard*.

10. Under cover of a letter dated April 8, 2008, the defendant served an amendment to its December 14, 2007 Initial Disclosures so as to comply with this

5

Court's April 3, 2008 decision, thus providing witness contact information (as was anyway required by Rule 26(a)).

11. Despite that the Stipulation and Order of Confidentiality provided for a mechanism for producing and protecting confidential information while expressly providing (at paragraph 15 thereof) for the rights of the parties "to apply to the Court for additional protection," the defendant chose to act unilaterally to obtain "additional protection" by redacting a considerable number of documents, without explanation. While some of the redactions may have been for the purpose of preserving privileged (or arguably privileged) matter, the defendant provided no privilege log despite Local Rule 26.2's mandate. Also, the defendant designated as "Confidential" every single piece of paper produced since the stipulation was executed, including such innocuous documents as COBRA notices, new hire checklists and the like.[2] Finally, I took note that though the defendant had produced documents "Bates stamped" sequentially, there was a void from after D0000242 until D001051, and I wanted to be sure that there was no confusion about what had, and had not, been produced.

12. Accordingly, on April 11, 2008, I wrote a letter to Mr. Schaefer in which I (a) raised the concerns (about unilateral redactions, privilege log, wholesale designation, and the Bates stamp "hole") noted in the above paragraph, (b) suggested specific resolutions, and (c) invited discussion on how we might resolve the issues other than as I

---

[2] The concern that the wholesale designations caused was, and remains, mostly prospective. It reflects, in my view, a cavalier disregard of the terms of the stipulated order and implicitly threatens to continue in that vein. While I understand the proper standard to be "why should there be protection?" rather than "what is the problem with designation?", I acknowledge that the designations thus far are not problematic for the prosecution of the plaintiff's case – especially since many of the hard-to-fathom designations were made to documents that were not even requested and have no bearing on the case.

6

had proposed. A copy of that letter is annexed hereto as Exhibit J. *The defendant has not in any manner responded to my April 11, 2008 letter except, seemingly, to ignore it.*

13. Finally, on April 14, 2008, in an effort to obtain and provide clarification concerning discovery and to thus move it along, I sent another letter to Mr. Schaefer, a copy of which letter is annexed hereto as Exhibit K. *Here again, the defendant has not in any manner responded to my April 14, 2008 letter except, seemingly, to ignore it.*

14. The discovery that was provided and our investigation to date evidences that the defendant is withholding responsive documents. Thus, for example (being a bit vague here in order to be careful not to disclose information designated as "confidential"), one of the produced Minutes of the Compensation Committee meetings[3] refers to a "draft management incentive plan" confirming that the plan should proceed in line with what was discussed. However, we have received no draft or final incentive or bonus plans, despite that any such documents would be responsive to Request no. 9. Also, on information and belief, former defendant SVP for Human Resources David Messenger oversaw and substantially informed, if not designed, the defendant's target bonus plans, policies and/or practices. When we contacted him, he expressed concern about whether talking to us would run afoul of his obligations under a separation agreement that he said he had with the defendant. That agreement has not been produced and would be responsive to Request no. 1. The plaintiff submits that the terms of such agreement, *e.g.* whatever post-employment cooperation obligations Mr. Messenger may have, inform the extent to which the defendant may "control" him for purposes of its duty to obtain information and materials from him in connection with preparing discovery

---

[3] All such Minutes were designated as Confidential even when they simply reflect approval of compensation of officers which compensation then became a matter of public record as a consequence of the defendant being a public corporation.

7

responses. See, *In re Folding Carton Antitrust Litigation,* 76 F.R.D. 420 (N.D.Ill.1977) and its progeny. The plaintiff claims a legitimate interest in obtaining that document not only to scrutinize the defendant's compliance with its "diligent search" obligations, but to probe for any bias that might arise from a continuing relationship, between the anticipated witness and the defendant.

Dated: New York, New York
      May 1, 2008

                        **KUDMAN TRACHTEN ALOE LLP**
                        *Attorneys for Plaintiff*

By:    **s/Gary Trachten**
        Gary Trachten (GT5480)
        350 Fifth Avenue, Suite 4400
        New York, New York 10118
        (212) 868-1010