Exhibit G

## Gary Trachten

**From:** McKenna, Kathleen [KMcKenna@proskauer.com]
**Sent:** Tuesday, February 26, 2008 3:02 PM
**To:** Gary Trachten
**Cc:** Alisa Silverstein; Schaefer, Ian C.
**Subject:** Re: Judd v Take Two

Gary: thank you for your thoughtful reply. We have indeed been working with our client actively over the last month to locate and gather documents and I have planned a follow up call for tomorrow. I am currently holding Thursday for witness interviews in another matter. I should know by this evening what my schedule is and will get back to you on when we might speak. Best regards, Kathleen
--------------------------
Sent from my BlackBerry Wireless Handheld


----- Original Message -----
From: Gary Trachten <gtrachten@kudmanlaw.com>
To: McKenna, Kathleen
Cc: Alisa Silverstein <asilverstein@kudmanlaw.com>
Sent: Tue Feb 26 13:41:45 2008
Subject: Judd v Take Two


Kathleen -

We received your client's slightly late discovery responses, and we regard them as woefully deficient. We recently heard of the Electronic Arts bid, so I now have some insight into how your client may have been distracted from the discovery task that was at the same time at hand.

We want to soon move forward to address with you (in the first instance) the deficiencies an effort to resolve what we can so that we avoid needlessly burdening the Court (and ourselves) with discovery motion practice that is more cumbersome than it should be. However, noting that you had sought a few weeks extension only a few days before the responses were due, I am hopeful that you already have in mind some supplementation that your client is or soon will be prepared to make. Please immediately let me know if that is so, and if so, what supplementation you contemplate. Your doing so might help narrow the issues that will need to be resolved.

I am out of the office this Friday through next Tuesday. I would like to confer on the discovery issues this Thursday afternoon. Let me know whether you are available then, and if not, let me know your availability for after Tuesday next week.

Thanks,

Gary Trachten
Kudman Trachten Aloe LLP
Attorneys at Law
350 Fifth Avenue - Suite 4400
New York, NY 10118
212.868.1010
Fax 212.868.0013


This email is meant to be a confidential communication to one or more intended recipients. It may contain and/or attach information that is protected by the attorney-client privilege or by another rule of law that protects confidential information. If it appears to you that you are not an intended recipient, you are to the extent provided by law prohibited from using, copying or disclosing its contents in any way. If you have reason to believe that you received this email in error, please immediately advise Kudman Trachten Aloe LLP by calling 212.868.1010 or by replying only to the sender of this email. Thank you for your cooperation.

IRS CIRCULAR 230 DISCLAIMER: Any tax advice contained in this e-mail is not intended to

be used, and cannot be used by any taxpayer, for the purpose of avoiding Federal tax penalties that may be imposed on the taxpayer. Further, to the extent any tax advice contained in this e-mail may have been written to support the promotion or marketing of the transactions or matters discussed in this e-mail, every taxpayer should seek advice based on such taxpayer's particular circumstances from an independent tax advisor.


*******************************************************
To ensure compliance with requirements imposed by U.S.
Treasury Regulations, Proskauer Rose LLP informs you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

*******************************************************
This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure. If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them. Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.
=======================================================

Exhibit H

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X

SAMUEL JUDD,

Plaintiff,

- against -

TAKE-TWO INTERACTIVE
SOFTWARE, INC.,

Defendant.
-----------------------------------------------------X

**STIPULATION AND
ORDER OF
CONFIDENTIALITY**

07 Civ 7932 (GEL) (HP)

WHEREAS, Plaintiff Samuel Judd ("Plaintiff") and Defendant Take-Two Interactive

Software, Inc. ("Defendant") (Plaintiff and Defendant together, "the parties") are presently

engaged in discovery; and

WHEREAS, the parties agree that certain information being sought in discovery or

contained in documents being sought in discovery may be of a confidential nature;

NOW, THEREFORE, the parties stipulate that:

## INFORMATION SUBJECT TO THIS STIPULATION

1.    This Stipulation and Order shall apply to all documents, and information

designated by either party herein as "confidential" (hereinafter the "CONFIDENTIAL

INFORMATION"). CONFIDENTIAL INFORMATION shall be limited to (i) personal

information regarding Plaintiff (including, but not limited to, medical information), (ii) personal

information regarding natural persons who are not parties to this lawsuit, and (iii) confidential or proprietary business information of Defendant.

## AFFIXING OF NOTICE

2.      CONFIDENTIAL INFORMATION contained in physical objects or documents, including any diskettes, magnetic or removable media, transcripts, exhibits, answers to interrogatories and other discovery requests, or copies thereof may be designated by stamping or affixing thereto the appropriate legend "CONFIDENTIAL." Any document so designated, and any information contained in any document or object so designated, shall be handled and treated by the receiving party in accordance with this so-ordered Stipulation and Order of Confidentiality. The designation by any party of any information as CONFIDENTIAL INFORMATION shall constitute a discovery response by the designating party and shall be deemed to be a signed certification pursuant to Fed. R. Civ. 26(g) by the designating party's attorney with respect to that response, including that the designation comports with the limitation provided for in paragraph 1, above.

## PERSONS AUTHORIZED TO RECEIVE CONFIDENTIAL INFORMATION

3.      Subject to the provisions of paragraph 4, persons authorized to receive CONFIDENTIAL INFORMATION (hereinafter "qualified recipient") shall only include:

> (i) Any partners, associates, or employees (which shall be deemed to include clerical personnel engaged through "temp agencies") of Kudman Trachten Aloe LLP; (ii) any future counsel for Plaintiff; (iii) Plaintiff; (iv) any expert and expert's staff or third party employed, retained or consulted by Plaintiff or his

attorneys for the purpose of assisting in the prosecution of this litigation, provided that the requirements of paragraph 4 are met; (v) any partners, associates or employees of Proskauer Rose LLP; (vi) any future counsel for Defendant; (vii) Defendant, including any employee or former employee of Defendant, involved in or connected with this litigation; (viii) any expert and expert's staff or third party employed or retained by Defendant or its attorneys for the purpose of assisting in the defense of this litigation, provided that the requirements of paragraph 5 are met; (ix) any potential trial witnesses; (x) the Court, its personnel, and shorthand reporters or videographers who take and transcribe testimony in connection with this action, as well as necessary secretarial and clerical assistants.

4.    Counsel desiring to disclose CONFIDENTIAL INFORMATION to any qualified recipient identified in paragraph 3, shall have such person:  read this Stipulation and Order.  In addition, counsel wishing to disclose CONFIDENTIAL INFORMATION to qualified recipients, identified in subsections (iii) (iv) (vii) (viii) and (ix) shall have such persons execute the Agreement to be Bound by the Stipulation of Confidentiality in the form attached hereto as Exhibit "A."

## LIMITATIONS ON THE USE OF CONFIDENTIAL INFORMATION

5.    CONFIDENTIAL INFORMATION, so long as it remains so classified, shall be held in confidence by each qualified recipient to whom it is disclosed, shall be used only for purposes of this action, shall not be used for any business purpose, and shall not be disclosed or made accessible to any person who is not a qualified recipient.  CONFIDENTIAL

INFORMATION shall be maintained in a manner that is reasonably designed to prevent disclosure or access by anyone except qualified recipients.

6.    Only qualified recipients and counsel may be present at a deposition at which CONFIDENTIAL INFORMATION is presented.

## PROCEDURE ON RECEIVING PARTY'S NON-CONCURRENCE WITH DESIGNATION

7.    A party receiving CONFIDENTIAL INFORMATION may at any time notify in writing (including by email, courier or fax) the designating party that the receiving party does not concur in one or more CONFIDENTIAL designations, specifying the designations with which it does not concur. If the designating party declines to declassify the information that had been designated and thus classified as CONFIDENTIAL, the designating party may within ten (10) business days after receipt of the notice of non-concurrence move the Court for a protective order. If no such motion is timely filed, the information specified in the notice of non-concurrence shall be deemed declassified and shall no longer be treated as CONFIDENTIAL INFORMATION under this Stipulation and Order. If a motion is filed to protect information designated as CONFIDENTIAL, that information shall continue to be deemed CONFIDENTIAL INFORMATION pending the Court's determination of the motion. In any motion for a protective order, the burden of showing good cause for protection shall be upon the proponent without regard to this Stipulation and Order.

8.    A party receiving CONFIDENTIAL INFORMATION does not concede that such information qualifies as such or is otherwise protectable regardless of whether such party gives notice of non-concurrence with the designation.

## MISCELLANEOUS

9.    This Stipulation shall be without prejudice to the right of any party to oppose production of any information on any ground other than the presence of CONFIDENTIAL INFORMATION.

10.    The designation of "CONFIDENTIAL INFORMATION" pursuant to this Stipulation shall not be construed as a concession by the disclosing party that such information is relevant or material to any issue or otherwise discoverable.

11.    Nothing contained in this Stipulation shall affect or restrict the rights of any party with respect to its own documents.

12.    Any of the notice requirements herein may be waived, in whole or in part, but only by a writing signed by the counsel of record for the party against which such waiver will be effective.

13.    The inadvertent or unintentional disclosure by the producing party of CONFIDENTIAL INFORMATION, regardless of whether the information was so designated at the time of the disclosure, shall not in and of itself be deemed a waiver in whole or in part of a party's claim of confidentiality, either as to the specific information disclosed or as to any other information disclosed or as to any other information relating thereto on the same or related subject matter.

14.    Upon final termination of this action, including all appeals, each party shall return all original materials produced and designated as CONFIDENTIAL INFORMATION to the producing party, and shall destroy, in whatever form stored or reproduced, all other materials including, but not limited to, pleadings, correspondence, memoranda, notes and other work

product materials, which contain or refer to CONFIDENTIAL INFORMATION, except that counsel may retain one archival copy of all such documents subject to this Stipulation.

15.    This Stipulation is entered without prejudice to the right of any party to apply to the Court at any time for additional protection.

**IT IS SO ORDERED,** with the consent of the parties, this ___ day of _____, 2008.

_____
Gerald E. Lynch, U.S.D.J.


**CONSENTED TO**:

KUDMAN TRACHTEN ALOE LLP


Dated: _____, 2008

_____
By:    Gary Trachten
       Alisa L. Silverstein
       Attorneys for Plaintiff
       350 Fifth Avenue
       New York, NY 10118
       (212) 868-1010


PROSKAUER ROSE LLP


Dated: _____, 2008

_____
By:    Kathleen M. McKenna
       Thomas A. McKinney
       Attorneys for Defendant
       1585 Broadway
       New York, NY 10036
       (212) 969-3130

**EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
SAMUEL JUDD,

                    Plaintiff,                07 Civ. 7932 (GEL) (HP)

    - against -

TAKE-TWO INTERACTIVE SOFTWARE, INC.,

                   Defendant.
-------------------------------------------------------- x

**AGREEMENT TO BE BOUND BY STIPULATION OF CONFIDENTIALITY**

I, _____, declare as follows:

1.     I have read and am familiar with the terms of the Stipulation and Order of Confidentiality ("Stipulation") (a copy of which is attached) in the above-captioned case governing disclosure of information designated as confidential.

2.     I have been instructed by either counsel for Samuel Judd or counsel for Take-Two, Interactive Software, Inc. ("Take-Two") without waiver of any attorney-client privilege, that the Court has ordered that any information designated as "confidential" and which I learned solely from Sam Judd, Take-Two, or their counsel in connection with the lawsuit referenced above, shall be kept confidential and used by me only in the preparation of this matter for trial and any other pre-trial proceedings in this case and that I may not disclose, convey, publish, or duplicate any of said confidential information other than under the limited conditions permitted in the Stipulation and Order of Confidentiality.

3.      I agree to abide by all the terms of the Stipulation and Order of Confidentiality and will not reveal or otherwise communicate to anyone any confidential information disclosed to me solely pursuant thereto except in accordance with the terms of said Stipulation and Order of Confidentiality.

4.      I agree not to use any confidential information for any purpose other than the litigation of the above-captioned matter.

5.      I agree to return to producing counsel any and all documentation delivered to me under the terms of said Stipulation and Order of Confidentiality and all copies thereof and to destroy any notes in my possession to the extent they contain any confidential information covered by the terms of this Stipulation and Order of Confidentiality.

6.      I acknowledge that the Stipulation and Order of Confidentiality is binding on me, recognizing that it has no application to information to the extent that I learn it other than from its disclosure to me by a party to the above-captioned lawsuit or such party's counsel.

7.      I consent to the personal jurisdiction of the above-captioned Court for the purposes of determining whether I have complied with this Stipulation and Order of Confidentiality and, if I have not complied, to determine after notice and an opportunity to be heard, what remedy, if any, should be offered to the designating party, taking into account whether the designation and classification of the information as confidential was and continued to be proper and/or factually and legally sustainable.

Executed this ____ day of _____, 200__, at_____.

_____

6544/73539-018  Current/10878103v3

03/19/2008 03:09 PM

Signature

_____
Printed Name

_____
Address

Exhibit I

## Alisa Silverstein

| | |
|---|---|
| **From:** | Alisa Silverstein |
| **Sent:** | Wednesday, March 05, 2008 5:59 PM |
| **To:** | 'McKenna, Kathleen' |
| **Cc:** | Gary Trachten; 'Schaefer, Ian C.' |
| **Subject:** | Judd v. Take-Two |

**Attachments:** Stip of Confidentiality.doc; stip of confidentiality(redline).DOC

Kathleen,
We have taken the liberty of marking up the confidentiality agreement that you sent to us. Attached is a copy of the revised Stipulation and Order of Confidentiality. (I have attached both a clean version and a red-lined version so you can easily see our revisions.) I presume once we are able to finalize this agreement, you will be able to promptly provide the documents your client deems confidential in accordance with Defendant's Responses and Objections to Plaintiff's First Request for Production and the parties will be better able to have a conversation regarding any deficiencies.
Thank you.

Alisa L. Silverstein
Kudman Trachten Aloe LLP
350 Fifth Avenue, Suite 4400
New York, New York 10118
(212) 868-1010
fax (212) 868-0013

This email is meant to be a confidential communication to one or more intended recipients. It may contain and/or attach information that is protected by the attorney-client privilege or by another rule of law that protects confidential information. If it appears that you are not an intended recipient, you are to the extent provided by law prohibited from using, copying or disclosing its contents in any way. If you have reason to believe that you received this email in error, please immediately advise Kudman Trachten Aloe LLP by calling 212.868.1010 or by replying only to the sender of this email.

3/24/2008

## Alisa Silverstein

| | |
|---|---|
| **From:** | Alisa Silverstein |
| **Sent:** | Tuesday, March 11, 2008 10:04 AM |
| **To:** | 'McKenna, Kathleen' |
| **Cc:** | Gary Trachten |
| **Subject:** | Judd v. Take 2 |

Kathleen,
I have not heard back from you regarding the confidentiality order that I emailed to you. Is it acceptable? Is your client prepared to provide the discovery it owes?

Alisa L. Silverstein
Kudman Trachten Aloe LLP
350 Fifth Avenue, Suite 4400
New York, New York 10118
(212) 868-1010
fax (212) 868-0013

This email is meant to be a confidential communication to one or more intended recipients. It may contain and/or attach information that is protected by the attorney-client privilege or by another rule of law that protects confidential information. If it appears that you are not an intended recipient, you are to the extent provided by law prohibited from using, copying or disclosing its contents in any way. If you have reason to believe that you received this email in error, please immediately advise Kudman Trachten Aloe LLP by caliing 212.868.1010 or by replying only to the sender of this email.

3/24/2008

## Alisa Silverstein

| | |
|---|---|
| **From:** | Alisa Silverstein |
| **Sent:** | Friday, March 14, 2008 10:38 AM |
| **To:** | 'McKenna, Kathleen' |
| **Cc:** | 'ischaefer@prokauer.com'; Gary Trachten |
| **Subject:** | Judd v. Take-Two |

Kathleen,

We sent you our revisions to the confidentiality order, which is being requested by your client, on March 5th. We still have not received your signature, any comments or counter-proposals to the agreement or the outstanding discovery that your client has owed us since February 20, 2008 (after we had already granted your client a lengthy extension to serve its responses).

If we do not receive the outstanding discovery by March 19th, we will have no choice but to seek the Court's intervention.

Thank you.

Alisa L. Silverstein
Kudman Trachten Aloe LLP
350 Fifth Avenue, Suite 4400
New York, New York 10118
(212) 868-1010
fax (212) 868-0013

This email is meant to be a confidential communication to one or more intended recipients. It may contain and/or attach information that is protected by the attorney-client privilege or by another rule of law that protects confidential information. If it appears that you are not an intended recipient, you are to the extent provided by law prohibited from using, copying or disclosing its contents in any way. If you have reason to believe that you received this email in error, please immediately advise Kudman Trachten Aloe LLP by calling 212.868.1010 or by replying only to the sender of this email.

3/24/2008

## Alisa Silverstein

| | |
|---|---|
| **From:** | Schaefer, Ian C. [ischaefer@proskauer.com] |
| **Sent:** | Friday, March 14, 2008 5:21 PM |
| **To:** | Alisa Silverstein |
| **Cc:** | Gary Trachten; McKenna, Kathleen; Schaefer, Ian C.; McKinney, Thomas A. |
| **Subject:** | RE: Judd v. Take-Two |
| **Attachments:** | (10878103_2)Stip of Confidentiality (Plaintiff_s Clean Revisions - 3_5_08).DOC |

Alisa,

Attached, please find a red-line of your clean version, which incorporates our suggested changes and comments to the revised Stip.

As a general matter, given that our language was fairly standard, we were surprised by the number and nature of the changes that were proposed. And to be sure, coordinating a response to these proposals has made the discovery process more burdensome and inefficient. Notwithstanding, once we come to an agreement and it is so ordered by the Court, we will then be in a position to continue to produce documents accordingly.

Ian

Ian C. Schaefer, Esq. | PROSKAUER ROSE LLP
1585 Broadway | New York, NY 10036-8299
v: 212.969.3563 | F: 212.969.2900
ischaefer@proskauer.com | www.proskauer.com

---

**From:** Alisa Silverstein [mailto:asilverstein@kudmanlaw.com]
**Sent:** Friday, March 14, 2008 10:38 AM
**To:** McKenna, Kathleen
**Cc:** ischaefer@prokauer.com; Gary Trachten
**Subject:** Judd v. Take-Two

Kathleen,
We sent you our revisions to the confidentiality order, which is being requested by your client, on March 5th. We still have not received your signature, any comments or counter-proposals to the agreement or the outstanding discovery that your client has owed us since February 20, 2008 (after we had already granted your client a lengthy extension to serve its responses).
If we do not receive the outstanding discovery by March 19th, we will have no choice but to seek the Court's intervention.
Thank you.

Alisa L. Silverstein
Kudman Trachten Aloe LLP
350 Fifth Avenue, Suite 4400
New York, New York 10118
(212) 868-1010
fax (212) 868-0013

This email is meant to be a confidential communication to one or more intended recipients. It may contain and/or

3/24/2008

attach information that is protected by the attorney-client privilege or by another rule of law that protects confidential information. If it appears that you are not an intended recipient, you are to the extent provided by law prohibited from using, copying or disclosing its contents in any way. If you have reason to believe that you received this email in error, please immediately advise Kudman Trachten Aloe LLP by calling 212.868.1010 or by replying only to the sender of this email.

**********************************************************
To ensure compliance with requirements imposed by U.S.
Treasury Regulations, Proskauer Rose LLP informs you that
any U.S. tax advice contained in this communication
(including any attachments) was not intended or written to
be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii)
promoting, marketing or recommending to another party any
transaction or matter addressed herein.

**********************************************************
This message and its attachments are sent from a law firm
and may contain information that is confidential and
protected by privilege from disclosure. If you are not the
intended recipient, you are prohibited from printing,
copying, forwarding or saving them. Please delete the
message and attachments without printing, copying,
forwarding or saving them, and notify the sender
immediately.

====================================================================

## Gary Trachten

| | |
|---|---|
| **From:** | Gary Trachten |
| **Sent:** | Monday, March 17, 2008 12:42 AM |
| **To:** | 'Schaefer, Ian C.' |
| **Cc:** | McKenna, Kathleen; McKinney, Thomas A.; Alisa Silverstein |
| **Subject:** | RE: Judd v. Take-Two |
| **Importance:** | High |

**Tracking:**

| Recipient | Delivery |
|---|---|
| 'Schaefer, Ian C.' | |
| McKenna, Kathleen | |
| McKinney, Thomas A. | |
| Alisa Silverstein | Delivered: 3/17/2008 12:42 AM |

We can try to work out the language of a stipulation and order, but only in accordance with the principles that (a) the good cause criteria of Rule 26(c) (and case law thereunder) for protecting information is not relaxed and (b) that, where there is disagreement about a claim of entitlement to protection, the proponent's burdens in that regard remain essentially as they would have been without the stipulation. Thus, we will reach agreement only if -

(1)   The stipulation will not expand the availability of protection beyond that which would be properly obtainable upon a motion for a protective order under Rule 26(c) -- in terms both of the kind of information that could be protected and the kind of protection to be obtained.
(2)   Since designating information as "confidential" constitutes a claim that there is good cause for a protective order in its regard, the lawyer for the proponent that information be protected as "confidential" must make a Rule 26(g) certification to that effect. (Why not?)
(3)   In the event that a party that receives information designated as "confidential" does not concur that there is good cause for the designation or disclosure limitation, then upon notice, both the procedural and substantive burdens return to the proponent to move for a protective order; the stipulation will afford (only) interim protection pending a prompt motion by the proponent.

(I also make the following comments:  First, to the extent "personal" information is not also of a customarily private nature, I don't believe that there exists good cause for applying a protective order to it.  Second, disclosure limitation should be narrowly limited to serving the legitimate interests for which the confidentiality specifically obtains. Third, I cannot think of any legitimate objection that you might have to our proposed form of stip and order, but if you explain your objections, I will consider them and try to accommodate any concerns that strike me as legitimate.)

If you decline to enter into a stipulation incorporating the above principles, then you will have to make a showing before the Court in support of a protective order for the information and documents being withheld.  Frankly, if confidentiality was going to be an issue, the defendant should have realized that, raised it, and sent a proposed stip long before it did so.

**Please advise of your intention in this regard by 5:00 p.m. Monday, March 17.**

**Gary Trachten**
Kudman Trachten Aloe LLP
Attorneys at Law
350 Fifth Avenue - Suite 4400

New York, NY 10118
212.868.1010
Fax 212.868.0013

This email is meant to be a confidential communication to one or more intended recipients. It may contain and/or attach information that is protected by the attorney-client privilege or by another rule of law that protects confidential information. If it appears to you that you are not an intended recipient, you are to the extent provided by law prohibited from using, copying or disclosing its contents in any way. If you have reason to believe that you received this email in error, please immediately advise Kudman Trachten Aloe LLP by calling 212.868.1010 or by replying only to the sender of this email. Thank you for your cooperation.

IRS CIRCULAR 230 DISCLAIMER: Any tax advice contained in this e-mail is not intended to be used, and cannot be used by any taxpayer, for the purpose of avoiding Federal tax penalties that may be imposed on the taxpayer. Further, to the extent any tax advice contained in this e-mail may have been written to support the promotion or marketing of the transactions or matters discussed in this e-mail, every taxpayer should seek advice based on such taxpayer's particular circumstances from an independent tax advisor.

**From:** Schaefer, Ian C. [mailto:ischaefer@proskauer.com]
**Sent:** Friday, March 14, 2008 5:21 PM
**To:** Alisa Silverstein
**Cc:** Gary Trachten; McKenna, Kathleen; Schaefer, Ian C.; McKinney, Thomas A.
**Subject:** RE: Judd v. Take-Two

Alisa,

Attached, please find a red-line of your clean version, which incorporates our suggested changes and comments to the revised Stip.

As a general matter, given that our language was fairly standard, we were surprised by the number and nature of the changes that were proposed. And to be sure, coordinating a response to these proposals has made the discovery process more burdensome and inefficient. Notwithstanding, once we come to an agreement and it is so ordered by the Court, we will then be in a position to continue to produce documents accordingly.

Ian

Ian C. Schaefer, Esq. | PROSKAUER ROSE LLP
1585 Broadway | New York, NY 10036-8299
v: 212.969.3563 | F: 212.969.2900
ischaefer@proskauer.com | www.proskauer.com

**From:** Alisa Silverstein [mailto:asilverstein@kudmanlaw.com]
**Sent:** Friday, March 14, 2008 10:38 AM
**To:** McKenna, Kathleen
**Cc:** ischaefer@prokauer.com; Gary Trachten
**Subject:** Judd v. Take-Two

Kathleen,
We sent you our revisions to the confidentiality order, which is being requested by your client, on March 5th. We still have not received your signature, any comments or counter-proposals to the agreement or the outstanding discovery that your client has owed us since February 20, 2008 (after we had already granted your client a lengthy extension to serve its responses).
If we do not receive the outstanding discovery by March 19th, we will have no choice but to seek the Court's intervention.
Thank you.

3/19/2008

Alisa L. Silverstein
Kudman Trachten Aloe LLP
350 Fifth Avenue, Suite 4400
New York, New York 10118
(212) 868-1010
fax (212) 868-0013

This email is meant to be a confidential communication to one or more intended recipients. It may contain and/or attach information that is protected by the attorney-client privilege or by another rule of law that protects confidential information. If it appears that you are not an intended recipient, you are to the extent provided by law prohibited from using, copying or disclosing its contents in any way. If you have reason to believe that you received this email in error, please immediately advise Kudman Trachten Aloe LLP by calling 212.868.1010 or by replying only to the sender of this email.

*********************************************************
To ensure compliance with requirements imposed by U.S.
Treasury Regulations, Proskauer Rose LLP informs you that
any U.S. tax advice contained in this communication
(including any attachments) was not intended or written to
be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii)
promoting, marketing or recommending to another party any
transaction or matter addressed herein.

*********************************************************
This message and its attachments are sent from a law firm
and may contain information that is confidential and
protected by privilege from disclosure. If you are not the
intended recipient, you are prohibited from printing,
copying, forwarding or saving them. Please delete the
message and attachments without printing, copying,
forwarding or saving them, and notify the sender
immediately.

3/19/2008

**Gary Trachten**

| | |
|---|---|
| **From:** | Schaefer, Ian C. [ischaefer@proskauer.com] |
| **Sent:** | Monday, March 17, 2008 4:59 PM |
| **To:** | Gary Trachten |
| **Cc:** | McKenna, Kathleen; McKinney, Thomas A.; Alisa Silverstein |
| **Subject:** | RE: Judd v. Take-Two |

Gary,

I have been unable to speak with either Kathleen or our client today.  As such, I am not in a position to respond substantively to your email by your deadline.  However, as soon we are able to confer and formulate a response, we will transmit it accordingly.

Thank you for your understanding.
Ian


Ian C. Schaefer, Esq. | PROSKAUER ROSE LLP
1585 Broadway | New York, NY 10036-8299
V: 212.969.3563 | F: 212.969.2900
ischaefer@proskauer.com | www.proskauer.com


---

**From:** Gary Trachten [mailto:gtrachten@kudmanlaw.com]
**Sent:** Monday, March 17, 2008 12:42 AM
**To:** Schaefer, Ian C.
**Cc:** McKenna, Kathleen; McKinney, Thomas A.; Alisa Silverstein
**Subject:** RE: Judd v. Take-Two
**Importance:** High

We can try to work out the language of a stipulation and order, but only in accordance with the principles that (a) the good cause criteria of Rule 26(c) (and case law thereunder) for protecting information is not relaxed and (b) that, where there is disagreement about a claim of entitlement to protection, the proponent's burdens in that regard remain essentially as they would have been without the stipulation.  Thus,we will reach agreement only if -

(1)    The stipulation will not expand the availability of protection beyond that which would be properly obtainable upon a motion for a protective order under Rule 26(c) -- in terms both of the kind of information that could be protected and the kind of protection to be obtained.
(2)    Since designating information as "confidential" constitutes a claim that there is good cause for a protective order in its regard, the lawyer for the proponent that information be protected as "confidential" must make a Rule 26(g) certification to that effect.  (Why not?)
(3)    In the event that a party that receives information designated as "confidential" does not concur that there is good cause for the designation or disclosure limitation, then upon notice, both the procedural and substantive burdens return to the proponent to move for a protective order; the stipulation will afford (only) interim protection pending a prompt motion by the proponent.

(I also make the following comments:  First, to the extent "personal" information is not also of a customarily private nature, I don't believe that there exists good cause for applying a protective order to it.  Second, disclosure limitation should be narrowly limited to serving the legitimate interests for which

3/25/2008

Page 2 of 4

the confidentiality specifically obtains. Third, I cannot think of any legitimate objection that you might have to our proposed form of stip and order, but if you explain your objections, I will consider them and try to accommodate any concerns that strike me as legitimate.)

If you decline to enter into a stipulation incorporating the above principles, then you will have to make a showing before the Court in support of a protective order for the information and documents being withheld. Frankly, if confidentiality was going to be an issue, the defendant should have realized that, raised it, and sent a proposed stip long before it did so.

**Please advise of your intention in this regard by 5:00 p.m. Monday, March 17.**

**Gary Trachten**
Kudman Trachten Aloe LLP
Attorneys at Law
350 Fifth Avenue - Suite 4400
New York, NY 10118
212.868.1010
Fax 212.868.0013

This email is meant to be a confidential communication to one or more intended recipients. It may contain and/or attach information that is protected by the attorney-client privilege or by another rule of law that protects confidential information. If it appears to you that you are not an intended recipient, you are to the extent provided by law prohibited from using, copying or disclosing its contents in any way. If you have reason to believe that you received this email in error, please immediately advise Kudman Trachten Aloe LLP by calling 212.868.1010 or by replying *only* to the sender of this email. Thank you for your cooperation.

**IRS CIRCULAR 230 DISCLAIMER**: Any tax advice contained in this e-mail is not intended to be used, and cannot be used by any taxpayer, for the purpose of avoiding Federal tax penalties that may be imposed on the taxpayer. Further, to the extent any tax advice contained in this e-mail may have been written to support the promotion or marketing of the transactions or matters discussed in this e-mail, every taxpayer should seek advice based on such taxpayer's particular circumstances from an independent tax advisor.

---

**From:** Schaefer, Ian C. [mailto:ischaefer@proskauer.com]
**Sent:** Friday, March 14, 2008 5:21 PM
**To:** Alisa Silverstein
**Cc:** Gary Trachten; McKenna, Kathleen; Schaefer, Ian C.; McKinney, Thomas A.
**Subject:** RE: Judd v. Take-Two

Alisa,

Attached, please find a red-line of your clean version, which incorporates our suggested changes and comments to the revised Stip.

As a general matter, given that our language was fairly standard, we were surprised by the number and nature of the changes that were proposed. And to be sure, coordinating a response to these proposals has made the discovery process more burdensome and inefficient. Notwithstanding, once we come to an agreement and it is so ordered by the Court, we will then be in a position to continue to produce documents accordingly.

Ian

Ian C. Schaefer, Esq. | PROSKAUER ROSE LLP
1585 Broadway | New York, NY 10036-8299
v: 212.969.3563 | f: 212.969.2900
ischaefer@proskauer.com | www.proskauer.com

3/25/2008

**From:** Alisa Silverstein [mailto:asilverstein@kudmanlaw.com]
**Sent:** Friday, March 14, 2008 10:38 AM
**To:** McKenna, Kathleen
**Cc:** ischaefer@prokauer.com; Gary Trachten
**Subject:** Judd v. Take-Two

Kathleen,

We sent you our revisions to the confidentiality order, which is being requested by your client, on March 5th. We still have not received your signature, any comments or counter-proposals to the agreement or the outstanding discovery that your client has owed us since February 20, 2008 (after we had already granted your client a lengthy extension to serve its responses).

If we do not receive the outstanding discovery by March 19th, we will have no choice but to seek the Court's intervention.

Thank you.

Alisa L. Silverstein
Kudman Trachten Aloe LLP
350 Fifth Avenue, Suite 4400
New York, New York 10118
(212) 868-1010
fax (212) 868-0013

This email is meant to be a confidential communication to one or more intended recipients. It may contain and/or attach information that is protected by the attorney-client privilege or by another rule of law that protects confidential information. If it appears that you are not an intended recipient, you are to the extent provided by law prohibited from using, copying or disclosing its contents in any way. If you have reason to believe that you received this email in error, please immediately advise Kudman Trachten Aloe LLP by calling 212.868.1010 or by replying only to the sender of this email.

```
************************************************************
To ensure compliance with requirements imposed by U.S.
Treasury Regulations, Proskauer Rose LLP informs you that
any U.S. tax advice contained in this communication
(including any attachments) was not intended or written to
be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii)
promoting, marketing or recommending to another party any
transaction or matter addressed herein.

************************************************************
This message and its attachments are sent from a law firm
and may contain information that is confidential and
protected by privilege from disclosure. If you are not the
intended recipient, you are prohibited from printing,
copying, forwarding or saving them. Please delete the
message and attachments without printing, copying,
forwarding or saving them, and notify the sender
immediately.

============================================================

************************************************************
To ensure compliance with requirements imposed by U.S.
Treasury Regulations, Proskauer Rose LLP informs you that
any U.S. tax advice contained in this communication
(including any attachments) was not intended or written to
```

3/25/2008

be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

***********************************************************
This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure. If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them. Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.

3/25/2008

## Gary Trachten

| | |
|---|---|
| **From:** | McKenna, Kathleen [KMcKenna@proskauer.com] |
| **Sent:** | Wednesday, March 19, 2008 4:10 PM |
| **To:** | Gary Trachten; Schaefer, Ian C. |
| **Cc:** | McKinney, Thomas A.; Alisa Silverstein |
| **Subject:** | RE: Judd v. Take-Two |

Gary,

My usual purpose in entering such Confidentiality Agreements is to, by advance agreement, carve out material that is stipulated to be confidential. It is clear to me from your comments and suggested revisions that all you are prepared to agree to is in essence a procedure for future discovery disputes. In effect, you propose basicaly what the Rules permit by motion. To be sure, this was not my intention in offering this Agreement, nor do I believe we have accomplished the underlying goals and purposes of entering into a Confidentiality Agreement. That said, I offer the attached revised Agreement for your consideration.

Kathleen


Kathleen M. McKenna  | PROSKAUER ROSE LLP
Partner
1585 Broadway | New York, NY 10036-8299
v: 212.969.3130 | F: 212.969.2900
kmckenna@proskauer.com | www.proskauer.com


**From:** Gary Trachten [mailto:gtrachten@kudmanlaw.com]
**Sent:** Monday, March 17, 2008 12:42 AM
**To:** Schaefer, Ian C.
**Cc:** McKenna, Kathleen; McKinney, Thomas A.; Alisa Silverstein
**Subject:** RE: Judd v. Take-Two
**Importance:** High

We can try to work out the language of a stipulation and order, but only in accordance with the principles that (a) the good cause criteria of Rule 26(c) (and case law thereunder) for protecting information is not relaxed and (b) that, where there is disagreement about a claim of entitlement to protection, the proponent's burdens in that regard remain essentially as they would have been without the stipulation. Thus, we will reach agreement only if -

(1)   The stipulation will not expand the availability of protection beyond that which would be properly obtainable upon a motion for a protective order under Rule 26(c) -- in terms both of the kind of information that could be protected and the kind of protection to be obtained.
(2)   Since designating information as "confidential" constitutes a claim that there is good cause for a protective order in its regard, the lawyer for the proponent that information be protected as "confidential" must make a Rule 26(g) certification to that effect.  (Why not?)
(3)   In the event that a party that receives information designated as "confidential" does not concur that there is good cause for the designation or disclosure limitation, then upon notice, both the procedural and substantive burdens return to the proponent to move for a protective order; the stipulation will afford (only) interim protection pending a prompt motion by the proponent.

3/25/2008

Page 2 of 4

(I also make the following comments: First, to the extent "personal" information is not also of a customarily private nature, I don't believe that there exists good cause for applying a protective order to it. Second, disclosure limitation should be narrowly limited to serving the legitimate interests for which the confidentiality specifically obtains. Third, I cannot think of any legitimate objection that you might have to our proposed form of stip and order, but if you explain your objections, I will consider them and try to accommodate any concerns that strike me as legitimate,)

If you decline to enter into a stipulation incorporating the above principles, then you will have to make a showing before the Court in support of a protective order for the information and documents being withheld. Frankly, if confidentiality was going to be an issue, the defendant should have realized that, raised it, and sent a proposed stip long before it did so.

**Please advise of your intention** in this regard by 5:00 p.m. Monday, March 17.

**Gary Trachten**
Kudman Trachten Aloe LLP
Attorneys at Law
350 Fifth Avenue - Suite 4400
New York, NY 10118
212.868.1010
Fax 212.868.0013

This email is meant to be a confidential communication to one or more intended recipients. It may contain and/or attach information that is protected by the attorney-client privilege or by another rule of law that protects confidential information. If it appears to you that you are not an intended recipient, you are to the extent provided by law prohibited from using, copying or disclosing its contents in any way. If you have reason to believe that you received this email in error, please immediately advise Kudman Trachten Aloe LLP by calling 212.868.1010 or by replying *only* to the sender of this email. Thank you for your cooperation.

**IRS CIRCULAR 230 DISCLAIMER:** Any tax advice contained in this e-mail is not intended to be used, and cannot be used by any taxpayer, for the purpose of avoiding Federal tax penalties that may be imposed on the taxpayer. Further, to the extent any tax advice contained in this e-mail may have been written to support the promotion or marketing of the transactions or matters discussed in this e-mail, every taxpayer should seek advice based on such taxpayer's particular circumstances from an independent tax advisor.

---

**From:** Schaefer, Ian C. [mailto:ischaefer@proskauer.com]
**Sent:** Friday, March 14, 2008 5:21 PM
**To:** Alisa Silverstein
**Cc:** Gary Trachten; McKenna, Kathleen; Schaefer, Ian C.; McKinney, Thomas A.
**Subject:** RE: Judd v. Take-Two

Alisa,

Attached, please find a red-line of your clean version, which incorporates our suggested changes and comments to the revised Stip.

As a general matter, given that our language was fairly standard, we were surprised by the number and nature of the changes that were proposed. And to be sure, coordinating a response to these proposals has made the discovery process more burdensome and inefficient. Notwithstanding, once we come to an agreement and it is so ordered by the Court, we will then be in a position to continue to produce documents accordingly.

Ian

Ian C. Schaefer, Esq. | PROSKAUER ROSE LLP
1585 Broadway | New York, NY 10036-8299
v: 212.969.3563 | f: 212.969.2900

3/25/2008

ischaefer@proskauer.com | www.proskauer.com

---

**From:** Alisa Silverstein [mailto:asilverstein@kudmanlaw.com]
**Sent:** Friday, March 14, 2008 10:38 AM
**To:** McKenna, Kathleen
**Cc:** ischaefer@prokauer.com; Gary Trachten
**Subject:** Judd v. Take-Two

Kathleen,
We sent you our revisions to the confidentiality order, which is being requested by your client, on March 5th.  We still have not received your signature, any comments or counter-proposals to the agreement or the outstanding discovery that your client has owed us since February 20, 2008 (after we had already granted your client a lengthy extension to serve its responses).
If we do not receive the outstanding discovery by March 19th, we will have no choice but to seek the Court's intervention.
Thank you.

Alisa L. Silverstein
Kudman Trachten Aloe LLP
350 Fifth Avenue, Suite 4400
New York, New York 10118
(212) 868-1010
fax (212) 868-0013

This email is meant to be a confidential communication to one or more intended recipients. It may contain and/or attach information that is protected by the attorney-client privilege or by another rule of law that protects confidential information.  If it appears that you are not an intended recipient, you are to the extent provided by law prohibited from using, copying or disclosing its contents in any way.  If you have reason to believe that you received this email in error, please immediately advise Kudman Trachten Aloe LLP by calling 212.868.1010 or by replying only to the sender of this email.


*****************************************************
To ensure compliance with requirements imposed by U.S.
Treasury Regulations, Proskauer Rose LLP informs you that
any U.S. tax advice contained in this communication
(including any attachments) was not intended or written to
be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii)
promoting, marketing or recommending to another party any
transaction or matter addressed herein.

*****************************************************
This message and its attachments are sent from a law firm
and may contain information that is confidential and
protected by privilege from disclosure. If you are not the
intended recipient, you are prohibited from printing,
copying, forwarding or saving them. Please delete the
message and attachments without printing, copying,
forwarding or saving them, and notify the sender
immediately.

==================================================

*****************************************************
To ensure compliance with requirements imposed by U.S.

3/25/2008

Treasury Regulations, Proskauer Rose LLP informs you that
any U.S. tax advice contained in this communication
(including any attachments) was not intended or written to
be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii)
promoting, marketing or recommending to another party any
transaction or matter addressed herein.

**********************************************************
This message and its attachments are sent from a law firm
and may contain information that is confidential and
protected by privilege from disclosure. If you are not the
intended recipient, you are prohibited from printing,
copying, forwarding or saving them. Please delete the
message and attachments without printing, copying,
forwarding or saving them, and notify the sender
immediately.

3/25/2008

# Gary Trachten

**From:** Gary Trachten
**Sent:** Thursday, March 20, 2008 1:16 PM
**To:** Kathleen M. McKenna (KMcKenna@Proskauer.com)
**Cc:** Alisa Silverstein
**Subject:** Judd - confidentiality stip and discovery issues more generally

Hi Kathleen -

See attached redline and clean. I have accepted all but one of your changes to the stip/order itself and I also resisted a couple of changes on the agreement to be signed by certain qualified recipients. I trust that you will find this fair and balanced and, in any event, acceptable. If so, please immediately move on to your making whatever production your client has thus far withheld on confidentiality grounds, all of which has presumably already gatherer and made ready to go. (We will, of course, honor the stipulation pending the Court's signing it.)

Please advise right away. Also, please expect a letter from me later today on the subject of the defendant's meeting its discovery obligations.

**Gary Trachten**
Kudman Trachten Aloe LLP
Attorneys at Law
350 Fifth Avenue - Suite 4400
New York, NY 10118
212.868.1010
Fax 212.868.0013

This email is meant to be a confidential communication to one or more intended recipients. It may contain and/or attach information that is protected by the attorney-client privilege or by another rule of law that protects confidential information. If it appears to you that you are not an intended recipient, you are to the extent provided by law prohibited from using, copying or disclosing its contents in any way. If you have reason to believe that you received this email in error, please immediately advise Kudman Trachten Aloe LLP by calling 212.868.1010 or by replying *only* to the sender of this email. Thank you for your cooperation.

**IRS CIRCULAR 230 DISCLAIMER:** Any tax advice contained in this e-mail is not intended to be used, and cannot be used by any taxpayer, for the purpose of avoiding Federal tax penalties that may be imposed on the taxpayer. Further, to the extent any tax advice contained in this e-mail may have been written to support the promotion or marketing of the transactions or matters discussed in this e-mail, every taxpayer should seek advice based on such taxpayer's particular circumstances from an independent tax advisor.

3/25/2008

# Gary Trachten

**From:**    McKenna, Kathleen [KMcKenna@proskauer.com]
**Sent:**    Tuesday, March 25, 2008 10:24 AM
**To:**      Gary Trachten
**Cc:**      Alisa Silverstein; Schaefer, Ian C.
**Subject:** RE: Judd - confidentiality stip and discovery issues more generally

Gary: I didn't realize that my associate was not copied on this. I was out a bit for the holiday. Was in deps yesterday and will be again today. Will review and discuss with client and hope to get to you by tomorrow. In the future, could I ask that you also copy Ian on all communications. Best regards, Kathleen


Kathleen M. McKenna  | PROSKAUER ROSE LLP
Partner
1585 Broadway | New York, NY 10036-8299
v: 212.969.3130 | F: 212.969.2900
kmckenna@proskauer.com | www.proskauer.com


---

**From:** Gary Trachten [mailto:gtrachten@kudmanlaw.com]
**Sent:** Thursday, March 20, 2008 1:16 PM
**To:** McKenna, Kathleen
**Cc:** Alisa Silverstein
**Subject:** Judd - confidentiality stip and discovery issues more generally

Hi Kathleen -

See attached redline and clean. I have accepted all but one of your changes to the stip/order itself and I also resisted a couple of changes on the agreement to be signed by certain qualified recipients. I trust that you will find this fair and balanced and, in any event, acceptable. If so, please immediately move on to your making whatever production your client has thus far withheld on confidentiality grounds, all of which has presumably already gatherer and made ready to go. (We will, of course, honor the stipulation pending the Court's signing it.)

Please advise right away. Also, please expect a letter from me later today on the subject of the defendant's meeting its discovery obligations.

**Gary Trachten**
Kudman Trachten Aloe LLP
Attorneys at Law
350 Fifth Avenue - Suite 4400
New York, NY 10118
212.868.1010
Fax 212.868.0013

This email is meant to be a confidential communication to one or more intended recipients. It may contain and/or attach information that is protected by the attorney-client privilege or by another rule of law that protects confidential information. If it appears to you that you are not an intended recipient, you are to the extent provided by law prohibited from using, copying or disclosing its contents in any way. If you have reason to believe that you received this email in error, please immediately advise Kudman Trachten Aloe LLP by calling 212.868.1010 or by replying *only* to the sender of this email. Thank you for your cooperation.

**IRS CIRCULAR 230 DISCLAIMER**: Any tax advice contained in this e-mail is not intended to be used, and cannot be used by any taxpayer, for the purpose of avoiding Federal tax penalties that may be imposed on the taxpayer. Further, to the extent any tax advice contained in this e-mail may have been written to support


3/25/2008

the promotion or marketing of the transactions or matters discussed in this e-mail, every taxpayer should seek advice based on such taxpayer's particular circumstances from an independent tax advisor.

*******************************************************
To ensure compliance with requirements imposed by U.S.
Treasury Regulations, Proskauer Rose LLP informs you that
any U.S. tax advice contained in this communication
(including any attachments) was not intended or written to
be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii)
promoting, marketing or recommending to another party any
transaction or matter addressed herein.

*******************************************************
This message and its attachments are sent from a law firm
and may contain information that is confidential and
protected by privilege from disclosure. If you are not the
intended recipient, you are prohibited from printing,
copying, forwarding or saving them. Please delete the
message and attachments without printing, copying,
forwarding or saving them, and notify the sender
immediately.

==========================================================================

3/25/2008

Exhibit J

investor.ea.com - News Article



MAIN  |  EA SPORTS  |  EA SPORTS BIG  |  POGO  |  EA STORE

HELP



INVESTOR.EA.COM

**INVESTOR HOME**

**CORPORATE GOVERNANCE**

**FINANCIALS**

**STOCK INFORMATION**

**INVESTOR NEWS & EVENTS**

**MORE INFORMATION**

*News Article*

<<  Back

**Electronic Arts Proposes to Acquire Take-Two Interactive Software for $26 Per Share in Cash, or Approximately $2.0 Billion**

**Proposal Represents 64 Percent Premium to Take-Two's February 15th Closing Price and 63 Percent Premium to Take-Two's Closing Price Over the Previous 30 Days**

REDWOOD CITY, Calif., Feb 24, 2008 (BUSINESS WIRE) -- Electronic Arts Inc. ("EA") (NASDAQ: ERTS) today announced that it has proposed to acquire Take-Two Interactive Software, Inc. ("Take-Two") (NASDAQ: TTWO) in an all-cash merger valued at approximately $2.0 billion.

EA's proposal of $26 per share in cash represents a premium of 64 percent over Take-Two's closing stock price on Feb. 15th, the last trading day before EA sent its revised proposal to Take-Two, and a 63 percent premium over Take-Two's 30-day trailing average price over the thirty trading days ending on that date.

EA's proposal was contained in a letter sent on Feb. 19th by EA Chief Executive Officer John Riccitiello to Strauss Zelnick, Executive Chairman of the Board of Directors of Take-Two. The Take-Two Board's subsequent rejection of the EA proposal led to EA's decision to release the letter and bring its proposal to the attention of all Take-Two shareholders.

Mr. Riccitiello said today: "Our all-cash proposal is a unique opportunity for Take-Two shareholders to realize immediate value at a substantial premium, while creating long-term value for EA shareholders. Take-Two's game designers would also benefit from EA's financial resources, stable, game-focused management team, and strong global publishing capabilities."

The EA letter warned that further Take-Two delay in accepting EA's proposal could prevent Take-Two's shareholders and other constituents from realizing its benefits. "There can be no certainty that in the future EA or any other buyer would pay the same high premium we are offering today," Mr. Riccitiello wrote. The letter added that timely completion of the proposed transaction would allow EA's strong publishing and distribution network to positively impact the ongoing post-launch sales of GTA IV and support the new Take-Two titles scheduled for launch later in the year and during the holiday selling season.

As noted in EA's Feb. 19th letter, EA's proposal is not conditioned on any financing requirement. It is, however, subject to certain customary conditions as set forth in the letter. EA's $26 per share proposal is based on the current equity capitalization of Take-Two. Although EA indicated in the letter that its proposal was subject to negotiations commencing by Feb. 22nd, EA intends to keep its proposal open for the present to give Take-Two's shareholders and Board of Directors further time to consider it.

The full text of EA's letter to Take-Two follows:

February 19, 2008

Mr. Strauss Zelnick
Executive Chairman of the Board of Directors
Take-Two Interactive Software, Inc.
622 Broadway
New York, NY 10012

Dear Strauss:

Thank you for your letter of February 15, 2008. While I appreciate its courteous tone and value our ongoing dialogue, I am disappointed that you have rejected Electronic Arts Inc.'s

investor.ea.com - News Article

("EA's") $25 per share cash offer to acquire Take-Two Interactive Software, Inc. ("Take-Two") and declined to engage in the friendly negotiations we proposed. We continue to believe that an acquisition of Take-Two by EA is in the best interests of your shareholders, employees and other constituents, and we remain interested in acquiring Take-Two. So, to further demonstrate our seriousness and encourage you to move forward now, I am writing to increase EA's offer to acquire all of the outstanding shares of Take-Two to $26 per share in cash. This offer is subject to Take-Two agreeing by February 22, 2008 to commence negotiation of a definitive merger agreement and to permit EA to commence a limited due diligence review of Take-Two.

Our revised all-cash offer represents a 64% premium over Take-Two's most recent closing price and a 63% premium over Take-Two's 30-day trailing average price (based on prices as of market close on Friday, February 15th). We believe our offer represents a unique and compelling opportunity for Take-Two shareholders to maximize the value of their investment in the company, with materially lower risk than if Take-Two proceeds on a stand-alone basis.

We also believe that the transaction we are proposing represents a uniquely attractive opportunity for Take-Two's creative teams and key employees. EA is a diversified leader with well-established franchises and proven intellectual properties, global reach, and significant financial resources. I know we both agree that Take-Two's talented creative teams deserve a permanent home within a stable and growing publisher that provides these teams an environment to do what they do best - create great games. EA is organized in a four-label model that provides our creative teams the autonomy they need to fully realize their creative ambitions, while also providing a stable and supportive corporate and publishing infrastructure which allows them to best address the global marketplace. We have the resources to make the significant investments in technology and infrastructure needed for the most creative and innovative games in the industry. In short, a combination with EA would provide Take-Two's studios and employees a combination of the right resources for investment and global reach, and the right environment to do their best work.

We believe that Take-Two's shareholders would not be well-served by any further delay in negotiating and completing the proposed merger. While the videogame industry remains an attractive, high-growth business, the challenges and risks in the business are escalating, and the need for scale is becoming more pronounced. Despite steps taken since March 2007, Take-Two remains dependent on a limited number of titles, and has limited capital resources. In addition, Take-Two faces ongoing financial, legal and operating issues and a very intense competitive environment. Given these factors, we believe it will be increasingly difficult for Take-Two to create sustainable shareholder value and that Take-Two remains exposed to considerable risk of value loss.

We also believe that any delay in this proposed transaction works against the interest of Take-Two's shareholders, because:

-- There can be no certainty that in the future EA or any other buyer would pay the same high premium we are offering today. We place significant value on the ability to close the transaction relatively quickly so that EA's strong publishing and distribution network, including our global packaged goods, online and wireless publishing organizations, can positively impact the catalogue sales of GTA IV and also the launch and sale of titles released later this year. We want to work with you and your team to complete the transaction in time to begin realizing its significant marketplace benefits in advance of this year's holiday selling season.

-- We believe Take-Two's current share price already reflects investor expectations for a strong release of GTA IV as well as the longer-term issues that Take-Two faces. Once GTA IV ships, Take-Two will again be dependent on less-popular titles and face increasing challenges to compete with larger and better-capitalized competitors.

-- With GTA IV shipping on April 29, development on this important title must now be essentially complete. We believe now is the right time to complete a transaction with minimal disruption for Take-Two.

We also believe the transaction we are proposing will create value for EA's shareholders. In addition to the top-line benefits noted above, we can achieve bottom-line benefits by combining Take-Two's and EA's corporate and publishing infrastructures and by optimally supporting Take-Two's creative teams and intellectual properties in EA's decentralized label structure.

Considerable thought, time and resources have been put forth in developing this offer, and

investor.ea.com - News Article

our Board of Directors unanimously supports it. Our offer is not conditioned on any financing requirement. It is subject to the satisfactory completion of a due diligence review of Take-Two, the negotiation and execution of mutually acceptable definitive transaction agreements, and the satisfaction of customary conditions to be set forth in such agreements. We are prepared to move forward immediately with formal due diligence and the negotiation and execution of a definitive merger agreement and believe that with adequate access to the necessary information and people, we can complete both in approximately two weeks. We believe that our due diligence review can be completed with minimal disruption, requiring only limited access to a small number of senior executives of Take-Two and its legal, accounting and financial advisors. We also have prepared a draft merger agreement that we can forward to you immediately.

Our strong preference is to conduct a private negotiation. If you are unwilling to proceed on that basis, however, we may pursue other means, including the public disclosure of this letter, to bring our offer and the compelling value it represents to the attention of Take-Two's shareholders.

I am available to meet and discuss any and all aspects of this proposal with you and your Board. Again, we believe this proposal represents a unique opportunity to maximize value for Take-Two's shareholders, and that the combined enterprise would be extraordinarily well positioned to build value for our respective customers, employees, developers and other business partners. We hope that you and your Board share our enthusiasm, and we look forward to hearing back from you by February 22.

Sincerely,

John Riccitiello
Chief Executive Officer

Conference Call

Electronic Arts will host a conference call on Monday, February 25, 2008 at 5:00 am PT (8:00 am ET) to discuss its proposal to acquire Take-Two Interactive and may disclose other material developments affecting its business and/or financial performance. Listeners may access the conference call live through the following dial-in number: (877) 795-3647, access code 220497, or via webcast at http://www.eatake2.com.

A dial-in replay of the conference call will be provided shortly after the call ends and remain available until March 3, 2008 at (719) 457-0820, access code 220497. A webcast archive of the conference call will be available shortly after the call ends at http://www.eatake2.com.

About Electronic Arts

Electronic Arts Inc. (EA), headquartered in Redwood City, California, is the world's leading interactive entertainment software company. Founded in 1982, the company develops, publishes, and distributes interactive software worldwide for video game systems, personal computers, cellular handsets and the Internet. Electronic Arts markets its products under four brand names: EA SPORTS(TM), EA(TM), EA SPORTS BIG(TM) and POGO(TM). In fiscal 2007, EA posted revenue of $3.09 billion and had 24 titles that sold more than one million copies. EA's homepage and online game site is www.ea.com. More information about EA's products and full text of press releases can be found on the Internet at http://info.ea.com. For more information about EA's proposal to acquire Take-Two, please visit http://www.eatake2.com.

Additional Information and Where to Find It

This communication is for informational purposes only and does not constitute an offer to buy any securities or a solicitation of any vote or approval or a solicitation of an offer to sell any securities. This material is not a substitute for the proxy statement Take-Two would file with the SEC if an agreement between EA and Take-Two is reached or any other documents which EA may file with the SEC and send to Take-Two stockholders in connection with the proposed transaction. INVESTORS AND SECURITY HOLDERS OF TAKE-TWO ARE URGED TO READ ANY SUCH DOCUMENTS FILED WITH THE SEC CAREFULLY IN THEIR ENTIRETY WHEN THEY BECOME AVAILABLE BECAUSE THEY WILL CONTAIN IMPORTANT INFORMATION ABOUT THE PROPOSED TRANSACTION.

Investors and security holders will be able to obtain free copies of any documents filed with

investor.ea.com - News Article

the SEC through the web site maintained by the SEC at http://www.sec.gov. Free copies of any documents filed by EA with the SEC can also be obtained by directing a request to EA, 209 Redwood Shores Parkway, Redwood City, CA 94065, telephone: (650) 628-1500.

EA and its directors and executive officers and other persons may be deemed to be participants in the solicitation of proxies in respect of the proposed transaction. Information regarding EA's directors and executive officers is available in its Annual Report on Form 10-K for the year ended March 31, 2007, which was filed with the SEC on May 30, 2007, its proxy statement for its 2007 annual meeting of shareholders, which was filed with the SEC on June 20, 2007, and Forms 8-K, which were filed with the SEC on June 6, 2007 and July 17, 2007. Other information regarding the participants in a proxy solicitation and a description of their direct and indirect interests, by security holdings or otherwise, will be contained in any proxy statement filed in connection with the proposed transaction.

Forward-Looking Statements

Some statements set forth in this press release, including those regarding EA's proposal to acquire Take-Two and the expected impact of the acquisition on EA's strategic and operational plans and financial results, contain forward-looking statements that are subject to change. Statements including words such as "anticipate", "believe", "estimate" or "expect" and statements in the future tense are forward-looking statements. These forward-looking statements are subject to risks and uncertainties that could cause actual events or actual future results to differ materially from the expectations set forth in the forward-looking statements. Some of the factors which could cause results to differ materially from the expectations expressed in these forward-looking statements include the following: the possibility that EA's proposal to acquire Take-Two will be rejected by Take-Two's board of directors or shareholders; the possibility that, even if EA's proposal is accepted, the transaction will not close or that the closing may be delayed; the effect of the announcement of the proposal on EA's and Take-Two's strategic relationships, operating results and business generally, including the ability to retain key employees; EA's ability to successfully integrate Take-Two's operations and employees; general economic conditions; and other factors described in EA's SEC filings (including EA's Annual Report on Form 10-K for the year ended March 31, 2007 and Quarterly Report on Form 10-Q for the quarter ended December 31, 2007). If any of these risks or uncertainties materializes, the proposal may not be accepted, the acquisition may not be consummated, the potential benefits of the acquisition may not be realized, EA's and/or Take-Two's operating results and financial performance could suffer, and actual results could differ materially from the expectations described in these forward-looking statements. All information in this press release is as of February 24, 2008. EA undertakes no duty to publicly update any forward-looking statement, whether as a result of new information, future developments or otherwise.

SOURCE: Electronic Arts Inc.

Electronic Arts Inc.
Tricia Gugler, 650-628-7327
Director, Investor Relations
or
Jeff Brown, 650-628-7922
Vice President Corporate Communications

© 2007 Electronic Arts Inc. All rights reserved.Legal Notice

**EA supports the Entertainment Software Ratings Board (ESRB) and game ratings.** As a founding member of the ESRB, we believe in an industry-supported, voluntary rating system. Ratings are designed to provide accurate and objective information about the content in computer and video games so that consumers can make an informed purchase decision. The ESRB is an independent organization which assigns game content ratings, enforces advertising guidelines and helps ensure responsible online privacy practices. EA's computer and video games as well as our marketing materials are submitted to the ESRB for review – each carries an ESRB rating. We strongly support efforts by the Entertainment Software Association (ESA) and the ESRB to educate consumers, parents and retailers on the ESRB rating system. You can find more information about the ESRB at www.esrb.org.

23 of 35 DOCUMENTS

Copyright 2008 Factiva ®, from Dow Jones
All Rights Reserved



**factiva.**

(Copyright (c) 2008, Dow Jones & Company, Inc.)

**THE WALL STREET JOURNAL.**
The Wall Street Journal

February 25, 2008 Monday

**SECTION:** Pg. B1

**LENGTH:** 1132 words

**HEADLINE:** Electronic Arts Offers $2 Billion for Take-Two --- Unsolicited Bid Signals Videogames Consolidation Is the Play of the Moment

**BYLINE:** By Nick Wingfield

**BODY:**

Rough-and-tumble tactics are common in popular videogames like Electronic Arts Inc.'s Madden NFL. Now the company has launched a blitz against one of its top competitors.

EA made an unsolicited $2 billion cash offer to buy Take-Two Interactive Software Inc., publisher of the hit Grand Theft Auto videogame, in the latest sign of consolidation in the games business.

EA, of Redwood City, Calif., yesterday said it was making public an offer of $26 a share for Take-Two after that company's board last week rejected the proposal as insufficient. Take-Two swiftly reiterated its negative opinion of the transaction.

The offer is a 50% premium over the closing price of Take-Two's shares Friday. EA said it was a 63% premium over Take-Two's average share price in the 30 trading days preceding Feb. 15, the last trading day before EA made its $26 a share offer.

The move comes at a time when one of EA's closest rivals, Activision Inc., is merging with the games unit of Vivendi SA to create Activision Blizzard Inc., a powerhouse with properties spanning the Guitar Hero series of music games to the hit online title, World of Warcraft. The consolidation of bigger players may put further pressure on smaller game developers to sell out to big entities, including media companies that are upping their investments in games.

EA's action follows an even bigger bid by Microsoft Corp. for Yahoo Inc., continuing a new trend of unsolicited offers in the maturing tech sector. Such companies had long stuck to negotiated acquisitions, on the theory that unfriendly transactions could spur the departure of talented engineers and programmers that were seen as key assets of target companies.

EA is also the maker of the Sims and other hit games. If its bid succeeds, the company would assume control over Grand Theft Auto, a franchise that is as well known for its controversial depictions of violence as it is for its titanic commercial success. More than 65 million copies of Grand Theft Auto games, which follow characters around gritty urban environments as they steal cars and perform other misdeeds, have been sold since the series was launched.

"This is among the most important franchises in the entire game industry," said John Riccitiello, EA's chief executive.

Electronic Arts Offers $2 Billion for Take-Two --- Unsolicited Bid Signals Videogames Consolidation Is the Play of the Moment The Wall Street Journal February 25, 2008 Monday

In an interview, Mr. Riccitiello described Take-Two as an "enormously attractive asset" that would find a better home at EA, a larger publisher with more extensive distribution networks abroad and the ability to more fully exploit Take-Two game properties on, for example, newer game devices like mobile phones. He said Take-Two as a standalone company faces substantial risk because of the increasingly high cost of game development and other factors.

Such unsolicited bids are often characterized as "bear hugs," since they aren't overtly hostile but are unwanted and difficult to escape. "We're a friendly bear," Mr. Riccitiello said. Characterizing the company's premium as generous, he added, "that's not an unfriendly transaction."

EA's offer comes about two months before Take-Two plans to ship Grand Theft Auto IV, one of the most eagerly anticipated games of the year. In an interview, Strauss Zelnick, the chairman of Take-Two, described EA's offer as "opportunistic" since the shares of game companies and other purveyors of entertainment often trade up in the months before the release of a big entertainment property.

"Had the offer been made at a price that was compelling from a value point-of-view, naturally, good governance would suggest we would have considered it," Mr. Zelnick said. "This offer is woefully undervalued."

Mr. Zelnick said Rockstar Games, the Take-Two group making Grand Theft Auto, is still working on the game and that discussions with EA would be a distraction from completing the title. In a press release, Take-Two said it offered to initiate further discussions with EA about a deal on April 30, the day after Grand Theft Auto IV ships, in order to stay focused on the game.

Take-Two's current management was installed after a revolt by dissident shareholders, who in March 2007 started a proxy fight and voted in a new slate of directors.

Ryan Brant, who founded the company in 1993 and served as chief executive until 2001 and chairman until 2004, in February 2007 pleaded guilty to criminal charges associated with stock options backdating.

Earlier, Take-Two was investigated by the Securities and Exchange Commission over its accounting practices. In 2005, the company agreed to pay $7.5 million to settle SEC charges that it "parked" copies of games with distributors during fiscal 2000 and 2001, inflating revenue by booking shipments of games that it later took back as returns.

EA said its pursuit of Take-Two stretches back nearly a year to the time the dissident Take-Two shareholders were attacking the poor financial performance of the company. In March of last year, Take-Two publicly disclosed that it was considering a sale of the company, and Mr. Riccitiello confirmed yesterday that EA was "very close" to acquiring Take-Two then.

But Mr. Riccitiello said he helped put the brakes on the deal at the time. In March, Mr. Riccitiello was acting as an adviser to EA in the time between his appointment as EA's new CEO in late February and his official start in that job in April. Mr. Riccitiello said he wanted to focus on reorganizing EA when he got to the company, instead of digesting Take-Two.

EA said it resumed discussions with Take-Two in December and offered the company $25 a share on Feb. 6, which Take-Two rejected on Feb. 15. EA boosted its offer to $26 a share on Feb. 19 and Take-Two rejected that proposal Feb. 22.

For EA, a deal could help it with a plan to reverse a recent loss in market share for its games because of the relatively weak performance of some key titles.

Michael Pachter, an analyst at Wedbush Morgan Securities, believes EA's bid for Take-Two was prompted in part by EA's desire to protect its important sports videogames business. Take-Two is one of its few credible competitors in sports games, and Mr. Pachter predicted that EA could use superior sports developers from Take-Two or shut down rival games to eliminate competition.

Jeff Brown, an EA spokesman, denies that sports motivated EA's offer. "Sports is a very small part of Take-Two, and they have a lot of other great assets," Mr. Brown says.

A big risk for EA, if the deal succeeds, is that it may not be able to retain key talent, including the team behind Grand Theft Auto. The creative direction of the game is still overseen, in part, by two brothers who helped invent the series, Sam and Dan Houser of Rockstar Games. Mr. Riccitiello, who says he knows the Housers well, says he hasn't discussed EA's offer with them.

16 of 35 DOCUMENTS

Copyright 2008 Factiva ®, from Dow Jones
All Rights Reserved

factiva.

(Copyright (c) 2008, Dow Jones & Company, Inc.)

**THE WALL STREET JOURNAL.**
The Wall Street Journal

February 29, 2008 Friday

**SECTION:** TECHNOLOGY & HEALTH; Pg. B4

**LENGTH:** 243 words

**HEADLINE:** Take-Two Reports More Inquiries, No Talks

**BYLINE:** By Nick Wingfield

**BODY:**

Take-Two Interactive Software Inc. said it has been approached by other potential acquirers since Electronic Arts Inc. made a $2 billion bid for the videogames publisher Sunday, but it isn't in negotiations with other companies about a deal, including EA.

According to a proxy filing with securities regulators yesterday, Take-Two, of New York, said it has received "informal indications of interest in a business combination" from other companies since EA made its $26 a share offer.

However, Take-Two said in the filing that it hasn't received any written offer or engaged in any "substantive discussions" with any other party about such a combination since its board of directors approved an amendment to an employment agreement with ZelnickMedia, an investment firm that manages Take-Two. That agreement occurred on Feb. 14.

Take-Two has rejected the acquisition offer from EA, of Redwood City, Calif., as ill-timed and too low. In acquiring the company, EA wants control of Take-Two's hit games, most of all the blockbuster Grand Theft Auto franchise.

In its filing, Take-Two said its comment about the lack of serious discussions with other parties were accurate as of Wednesday, but may not be correct following that. The company said it doesn't intend to update such statements unless it has a legal obligation to do so.

Take-Two will hold an annual meeting of shareholders April 10.

License this article from Dow Jones Reprint Service

**NOTES:**
PUBLISHER: Dow Jones & Company, Inc.

**LOAD-DATE:** February 29, 2008

**The New York Times**
nytimes.com

PRINTER-FRIENDLY FORMAT
SPONSORED BY 

March 12, 2008

# Take-Two Vows to Beat Expectations and a Bidder

By MATT RICHTEL

SAN FRANCISCO — Facing a takeover bid from rival Electronic Arts, Take-Two Interactive sought to assure Wall Street investors on Tuesday that it is capable of growing on its own.

Take-Two, the video game maker under new management after a series of financial and regulatory problems, said it expects to perform better this year than Wall Street had projected.

The company estimated that for its fiscal 2008, it expects to earn as much as $1.55 a share, compared with analyst projections that it would earn about $1.35 a share. Revenue, it said, would grow more than 40 percent to as high as $1.4 billion.

For the current quarter, the company projected sales of up to $500 million, double last year's revenue, with earnings of $1 to $1.10 a share, which were also higher than analyst estimates.

Daniel Ernst, an analyst with Soleil Hudson Square Research, who recommends his clients buy Take-Two, said the improved forecast sends a message to investors that the company was stronger than Electronic Arts was giving it credit for.

Take Two has rebuffed E.A.'s offer of $26 a share, or $2 billion. Take-Two said it would not negotiate with the game software giant until after the April 29 release of Grand Theft Auto IV, the latest version of the company's blockbuster franchise.

The improved guidance came during Take-Two's conference call to announce results for its first quarter, which ended Jan. 31. For the quarter, the company posted a net loss of $38 million, or 52 cents a share. That compared with a loss of $21.5 million, or 30 cents a share, a year ago. Revenue fell 13.3 percent, to $240.4 million.

But not all analysts reached the conclusion that the improved outlook helps Take-Two in its battle with Electronic Arts. Colin Sebastian, an analyst with Lazard Capital Markets, said it could be perceived as good news for Electronic Arts, for which he has a buy rating. The reason, he said, is that Electronic Arts and its shareholders might be heartened to know that Take-Two is heading in the right direction.

The differing perspectives spoke to the game within the game that is developing as the parties prepare for Take-Two's annual meeting, which takes place on April 10. At that point, shareholders will at least be asked to examine one aspect of the takeover bid: Take-Two's management has proposed a controversial policy change

Take-Two Vows to Beat Expectations and a Bidder - New York Times

that would give it a lucrative return in the event of change in ownership.

A shareholder lawsuit, filed last Friday in Delaware Chancery Court, contends that the increased compensation and "failure to negotiate" with Electronic Arts represent a failure to maximize shareholder value.

Copyright 2008 The New York Times Company

Privacy Policy  |  Search  |  Corrections  |  RSS  |  First Look  |  Help  |  Contact Us  |  Work for Us  |  Site Map

11 of 35 DOCUMENTS

Copyright 2008 Factiva ®, from Dow Jones
All Rights Reserved

factiva.

(Copyright (c) 2008, Dow Jones & Company, Inc.)

**THE WALL STREET JOURNAL**

The Wall Street Journal

March 13, 2008 Thursday

**SECTION:** LEADING THE NEWS; Pg. A3

**LENGTH:** 538 words

**HEADLINE:** EA's Take-Two Saga Turns Hostile --- Offer Is Made to Holders Of 'Grand Theft' Maker; Other Bidders Playing?

**BYLINE:** By Nick Wingfield and Don Clark

**BODY:**

Electronic Arts Inc. is taking its battle for Take-Two Interactive Software Inc. directly to the rival videogame publisher's shareholders.

Following the rejection of its unsolicited bid to acquire Take-Two, EA plans a tender offer to acquire all of Take-Two's outstanding shares for $26 each, the price it offered the company last month, people familiar with the matter say.

The move signals that EA's attempt to gain control of Take-Two, publisher of the blockbuster Grand Theft Auto game, is turning hostile.

The EA bid places a value of about $2 billion on Take-Two, which temporarily traded above the $26 a share that EA offered, but later sunk below the offer price. The stock traded at 4 p.m. yesterday at $24.91, up 26 cents, on Nasdaq.

The Grand Theft Auto series -- videogames notorious for their depictions of crime and violence -- have sold more than 65 million copies, making it one of the most important franchises in the videogame industry.

EA, of Redwood City, Calif., made its unsolicited offer public on February 24, stating that Take-Two's directors the prior week had privately rejected the $26-a-share proposal. When it was announced, the offer represented a 50% premium over the most recent closing price of Take-Two's shares.

Take-Two has consistently rejected the offer as too low and ill-timed. It also said it has been approached by other potential acquirers since the bid was announced, but didn't indicate it was in negotiations with other companies about a deal.

Nevertheless, some analysts think that EA will ultimately have to sweeten its offer if it wants to get the deal done in the near term. "What the stock and the market are telling you is every day that goes by makes this deal less likely at $26," said Evan Wilson, an analyst at Pacific Crest Securities.

Analysts also believe it is possible EA will walk away if Take-Two's shareholders don't budge, in hopes of picking up the company later for less.

Unsolicited takeover offers were once rare in the technology sector. But they have become more common as the industry matures, with acquirers concluding that the brand value and customer base of target companies outweigh the risk that key executives or engineers will defect after an acquisition.

EA's Take-Two Saga Turns Hostile --- Offer Is Made to Holders Of 'Grand Theft' Maker;  Other Bidders Playing? The
Wall Street Journal March 13, 2008 Thursday

Still, there have been few true hostile offers, when a potential acquirer takes its offer around a company's board and right to shareholders.

Such offers often evolve into a game of "chicken," as shareholders try to hold out for a higher offer and the potential acquirer threatens to walk away. Boards of directors, meanwhile, often end up negotiating with the hostile party if shareholder support favors a deal.

Take-Two, based in New York, is led by several members of ZelnickMedia Corp. The investment firm was hired to run Take-Two in March 2007 by a group of dissident shareholders that ousted Take-Two's prior management and most of its board.

The EA tender offer is set to expire April 11 at midnight, unless extended, people familiar with the matter said. That is a day after Take-Two has scheduled its annual meeting of shareholders in New York.

---

Dennis K. Berman contributed to this article.

License this article from Dow Jones Reprint Service

**NOTES:**
PUBLISHER: Dow Jones & Company, Inc.

**LOAD-DATE:** March 13, 2008

Take-Two Interactive Software Advises Stockholders To Take No Action In Response To Electronic Arts ...   Page 1 of 1

Close Window

## Take-Two Interactive Software Advises Stockholders To Take No Action In Response To Electronic Arts Offer

**New York, NY - March 13, 2008** -The Board of Directors of Take-Two Interactive Software, Inc. (NASDAQ:TTWO) today recommended that Take-Two stockholders take no action at this time in response to the announcement by Electronic Arts Inc. (NASDAQ:ERTS) that it has made an unsolicited conditional tender offer to acquire all of Take-Two's outstanding shares of common stock for $26 per share in cash.

Consistent with its fiduciary duties, and in consultation with its independent financial and legal advisors, Take-Two's Board will review and consider EA's offer, and within 10 business days, will advise Take-Two's stockholders of the Board's position regarding the offer as well as its reasons for that position.

Bear Stearns and Lehman Brothers are acting as financial advisors to Take-Two and Proskauer Rose LLP is acting as legal advisor.

About Take-Two Interactive Software

Headquartered in New York City, Take-Two Interactive Software, Inc. is a global developer, marketer, distributor and publisher of interactive entertainment software games for the PC, PLAYSTATION®3 and PlayStation®2 computer entertainment systems, PSP® (PlayStation®Portable) system, Xbox 360® and Xbox® video game and entertainment systems from Microsoft, Wii™, Nintendo GameCube™, Nintendo DS™ and Game Boy® Advance. The Company publishes and develops products through its wholly owned labels Rockstar Games, 2K Games, 2K Sports and 2K Play, and distributes software, hardware and accessories in North America through its Jack of All Games subsidiary. Take-Two's common stock is publicly traded on NASDAQ under the symbol TTWO. For more corporate and product information please visit our website at www.take2games.com.

All trademarks and copyrights contained herein are the property of their respective holders.

This press release contains forward-looking statements made in reliance upon the safe harbor provisions of Section 27A of the Securities Act of 1933, as amended, and Section 21E of the Securities Exchange Act of 1934, as amended. The statements contained herein which are not historical facts are considered forward-looking statements under federal securities laws. Such forward-looking statements are based on the beliefs of our management as well as assumptions made by and information currently available to them. The Company has no obligation to update such forward-looking statements. Actual results may vary significantly from these forward-looking statements based on a variety of factors. These risks and uncertainties include the matters relating to the Special Committee's investigation of the Company's stock option grants and the restatement of our consolidated financial statements. The investigation and conclusions of the Special Committee may result in claims and proceedings relating to such matters, including previously disclosed shareholder and derivative litigation and actions by the Securities and Exchange Commission and/or other governmental agencies and negative tax or other implications for the Company resulting from any accounting adjustments or other factors. Further risks and uncertainties associated with Electronic Arts' tender offer to acquire the Company's outstanding shares: the risk that key employees may pursue other employment opportunities due to concerns as to their employment security with the Company; the risk that the acquisition proposal will make it more difficult for the Company to execute its strategic plan and pursue other strategic opportunities; the risk that the future trading price of our common stock is likely to be volatile and could be subject to wide price fluctuations; and the risk that stockholder litigation in connection with Electronic Arts' tender offer, or otherwise, may result in significant costs of defense, indemnification and liability. Other important factors are described in the Company's Annual Report on Form 10-K for the fiscal year ended October 31, 2007, in the section entitled "Risk Factors" as updated in the Company's Quarterly Report on Form 10-Q for the fiscal quarter ended January 31, 2008, in the section entitled "Risk Factors." All forward-looking statements are qualified by these cautionary statements and are made only as of the date they are made.

# # #

**The New York Times**
nytimes.com

PRINTER-FRIENDLY FORMAT
SPONSORED BY 

March 14, 2008

# New Shareholders to Weigh Take-Two Bid

By MATT RICHTEL

SAN FRANCISCO — Electronic Arts, which on Thursday began a direct tender offer to shareholders of Take-Two Interactive, finds itself negotiating with a group of shareholders much different from what it would have faced a month ago, when it first proposed a takeover.

Since then there has been a considerable turnover in ownership of Take-Two. Gone are many long-term shareholders, who have given way to a group of investors willing to risk that the buyout will provide quick profit.

This turnabout has laid the groundwork for a narrative that will play out over the next 20 days involving two of the biggest companies in the video game industry.

Electronic Arts announced last month that it would pay $2 billion for Take-Two, an offer the company's management rejected. The offer amounts to $26 a share, a 50 percent premium over the stock's closing price of $17.13 on Feb. 22.

Many Take-Two shareholders have sold shares to investors looking to profit in a buyout. But that does not mean the short-term investors will be satisfied with Electronic Arts' current offer. Some say these investors are gambling that they can force Electronic Arts to raise its bid a few more dollars per share.

John Riccitiello, the chief executive of Electronic Arts, said he thought some of these investors could become nervous if they thought Electronic Arts would walk away if pressed too hard.

"Some might hold out for $1 or $2," he said in an interview on Thursday. But they "might be more scared of losing $7 or $8 if our offer goes away."

That perspective differs from what some of the short-term investors, commonly called arbitrage investors, are saying. One such investor, who declined to be identified citing his company's policy against commenting publicly, said that he believed that institutions with small short-term stakes could band together to push Electronic Arts to raise its offer at least a few dollars.

The short-term investor said that he believed a representative from Electronic Arts has told Wall Street investors that the company is loath to walk away from the deal, giving the arbitrageurs hope the company could be pressured to raise its price.

New Shareholders to Weigh Take-Two Bid - New York Times

Take-Two's management has said it will not negotiate any deal until after April 29, the day it releases Grand Theft Auto IV, the next iteration of its hit video game franchise.

Take-Two declined to comment on the hostile takeover effort. In a news release, the company said its directors would take 10 days to consider the proposal.

The tender offer lasts 20 business days, ending on April 11. At that point, Electronic Arts could extend the offer.

For his part, Mr. Riccitiello said that his company cannot afford to wait to negotiate until the release of Grand Theft Auto IV. He said Electronic Arts must subsume Take-Two in time to get the full benefit of its assets by the all-important year-end holiday sales season.

Since Electronic Arts first made public its interest in acquiring Take-Two there has been unusually high trading volume in the company's shares. Among the heavy traders, funds at Oppenheimer have sold 8.8 million shares, about half what they owned previously. Some Fidelity funds have sold 8.2 million shares, leaving it with a relatively paltry 2 million shares.

Fidelity declined to comment, citing a policy against commenting on individual securities. Oppenheimer did not respond to a request for comment.

Evan Wilson, an analyst with Pacific Crest Securities, said that Electronic Arts' decision to go hostile could cause it some problems with Take-Two's creative teams. He said that game development studios, like Rockstar Games, which makes Grand Theft Auto, may not stick around to work for Electronic Arts.

Mr. Riccitiello said he had not spoken to the Rockstar team about the takeover effort, but he said he could make a strong case to them that Electronic Arts offers them a stable company that can deliver their games to a broader audience.

"We, in many ways, represent a white knight." he said.

Copyright 2008 The New York Times Company

8 of 35 DOCUMENTS

Copyright 2008 Factiva ®, from Dow Jones
All Rights Reserved

**factiva.**

(Copyright (c) 2008, Dow Jones & Company, Inc.)

**THE WALL STREET JOURNAL.**

The Wall Street Journal

March 14, 2008 Friday

**SECTION:** TECHNOLOGY & HEALTH; Pg. B3

**LENGTH:** 311 words

**HEADLINE:** In Brief

**BODY:**

Abbott Gets FDA Nod

For Glucose Monitor

Abbott Laboratories Inc. received Food and Drug Administration approval for a continuous glucose-monitoring system that allows constant tracking of blood-sugar levels to help diabetes patients manage the disease. The FreeStyle Navigator system works through a sensor placed in the back of the upper arm or abdomen, and a transmitter that sends wireless information to a receiver device that is the size of a pager. It will be available by prescription starting in the second quarter. The system was approved in Europe in June 2007 and has been available outside the U.S. since September.

Court Ruling Overturns

Barrier to CNET's Board

Jana Partners LLC said a Delaware court upheld the rights of an affiliate of the hedge fund to nominate seven directors to the board of CNET Networks Inc. The decision clears the way for a dissident shareholder group, led by Jana and Sandell Asset Management Corp., to mount a takeover of the San Francisco-based technology-news Web site's board. Jana has a 10% stake in CNET, according to filings last month. Sandell has a 2.3% stake. In January, CNET adopted a poison-pill provision to block Jana's nominees, prompting the lawsuit decided yesterday. CNET said it is considering an appeal.

Take-Two Board to Review

Electronic Arts' Offer

Take-Two Interactive Software Inc.'s board recommended shareholders take no action in response to Electronic Arts Inc.'s unsolicited offer to acquire Take-Two for $26 a share. Take-Two said its board will review and consider the offer and advise stockholders on its position within 10 business days. EA yesterday announced its public hostile offer, valued at about $2 billion. Take-Two's shares rose 73 cents, or 2.9%, to $25.64 in 4 p.m. Nasdaq Stock Market composite trading.

License this article from Dow Jones Reprint Service

**NOTES:**
PUBLISHER: Dow Jones & Company, Inc.





**The New York Times**
nytimes.com

PRINTER-FRIENDLY FORMAT
SPONSORED BY

March 26, 2008

# Take - Two Urges Shareholders to Reject EA Offer

**By REUTERS**

**Filed at 9:04 a.m. ET**

NEW YORK (Reuters) - Take-Two Interactive Software Inc <TTWO.O> on Wednesday asked shareholders to reject a $26-per-share takeover offer from rival video game publisher Electronic Arts Inc <ERTS.O> as too low, but said it had begun efforts to explore a sale or other options.

Take-Two said it was still open to a combination with EA or another company, but not before it releases its upcoming "Grand Theft Auto 4" title, widely expected to be the best-selling video game this year.

The company said its board had begun a process to consider strategic alternatives and to assemble materials necessary for any interested parties to conduct due diligence. Take-Two said it has seen indications of interest from other companies since EA made its offer, but has not held any substantive talks.

"Our stockholders' interests would hardly be served by accepting an offer from EA at the wrong price and the wrong time," Chairman Strauss Zelnick said in a statement.

Take-Two said it had also adopted a shareholder rights' plan to guard against EA's hostile bid and moved the date of its annual meeting to April 17, from a previously-scheduled April 10, in New York.

EA's unsolicited offer for Take-Two turned hostile earlier this month, when it took the $2 billion all-cash bid directly to stockholders. Take-Two rebuffed the bid, saying it underestimated the strength of "Grand Theft Auto 4."

Under EA's tender offer, the company does not go out and buy shares in the open market. Rather, it amounts to asking shareholders if they think $26 a share is a good deal.

If a majority agree it is, the deal goes through.

Many analysts say a deal between EA and Take-Two will almost certainly go through but that EA may have to raise its offer to $27 or $28 a share.

Shares in Take-Two rose to $25.95 in pre-market trading from its close of $25.82 on the Nasdaq on Tuesday.

Take-Two, which also makes games such as "BioShock," "Major League Baseball 2K" and "Midnight Club,"

Take - Two Urges Shareholders to Reject EA Offer - New York Times

earlier this month forecast quarterly earnings above Wall Street estimates, citing better-than-expected advance orders for Grand Theft Auto 4.

EA, the world's largest video game publisher, is eyeing those franchises as it faces stepped-up competition from rival Activision Inc <ATVI.O>, which is merging with the video games unit of French conglomerate Vivendi <VIV.PA>.

It has argued that Take-Two's share price already reflects investor expectations for a strong response to "Grand Theft Auto 4," after which the company will depend on less popular titles, according to a letter from EA Chief Executive John Riccitiello cited in a Take-Two filing with U.S. securities regulators.

After news of EA's initial offer to Take-Two management was made public, the two biggest shareholders in Take-Two cut their stakes from a combined 37.7 percent to 14.25 percent.

Bear Stearns and Lehman Brothers have been advising Take-Two on the EA offer, and both have determined the offer price was inadequate, the company said. Proskauer Rose LLP is serving as its legal adviser.

(Reporting by Sinead Carew and Michele Gershberg; Editing by John Wallace and Dave Zimmerman)

Copyright 2008 Reuters Ltd.