UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X    ECF Case
SAMUEL A. JUDD,                                              07 Civ. 7932 (GEL)(HP)

                              Plaintiff,

          -against-

TAKE-TWO INTERACTIVE SOFTWARE, INC.,

                              Defendant.
----------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO COMPEL AND FOR OTHER RELIEF**


**KUDMAN TRACHTEN ALOE LLP**
350 Fifth Avenue, Suite 4400
New York, New York 10118
(212) 868-1010
*Attorneys for Plaintiff*

Counsel:  Gary Trachten
          Alisa L. Silverstein

# TABLE OF CONTENTS

**Page**

Table of Authorities ……………………………………………………………………ii

Introduction ....................................................................................................... 1

Procedural History and Relevant Facts ............................................................. 2

Overview of Discovery Sought and Its Relevance ........................................... 8

Argument: ....................................................................................................... 10

**POINT I**
THE COURT SHOULD ISSUE AN ORDER COMPELLING THE DEFENDANT
TO FULLY ANSWER AND RESPOND TO, BY A SOON DATE CERTAIN, THE
DISCOVERY DEMANDS SERVED DECEMBER 28, 2007. ................................. 10

**POINT II**
DUE DISCLOSURE NOT HAVING BEEN PROVIDED PRIOR TO THE FILING
OF THIS MOTION, AND THE NON-DISCLOSURE NOT BEING
SUBSTANTIALLY JUSTIFIED, THE COURT *MUST* REQUIRE DEFENDANT TO
PAY PLAINTIFF'S EXPENSES ON THIS MOTION. ............................................ 11

**POINT III**
ALL OF THE DEFENDANT'S OBJECTIONS TO THE DISCOVERY SOUGHT
SHOULD BE DEEMED WAIVED AND/OR DETERMINED TO BE TOO
GENERAL, OBFUSCATORY OR OTHERWISE INSUFFICIENT. ......................... 12

    A.   Late Responses .................................................................. 12

    B.   General and/or Superfluous Objections ........................... 12

    C.   Privilege Objections and Privilege Log .......................... 15

    D.   Fed.R.Evid. 408 Objections ............................................ 15

**POINT IV**
IN THE CIRCUMSTANCES OF THIS CASE, ADDITIONAL SANCTIONS ARE
WARRANTED UNDER FED.R.CIV.P.37(d)(1)(A)(ii) AND 37(b)(2). .................... 16

Conclusion ...................................................................................................... 19

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Airtex Corporation v. Shelley Radiant Ceiling Co.,* 536 F.2d 145 (7th Cir. 1976)………17

*Fisher v. Baltimore Life Insurance Co.,* 235 F.R.D. 617 (N.D.Va. 2006)....................... 14

*City of Wichita v. Aero Holdings, Inc.*, 192 F.R.D. 300 (D. Kan. 2000) ......................... 16

*Cliffstar Corporation Sunsweet Growers, Inc.*, 218 F.R.D. 65 (W.D.N.Y. 2003) ........... 12

*Elkay Manufacturing Co. v. Ebco Manufacturing Co.,* 1995 WL 389822 (N.D.Ill.)....... 14

*Momah v. Albert Einstein Medical Center,* 164 F.R.D. 412 (E.D. Pa. 1996)................... 14

*In re Folding Carton Antitrust Litigation,* 76 F.R.D. 420 (N.D.Ill. 1977) ........................ 9

*Judd v. Take-Two Interactive Software, Inc.*, 2008 WL 906706 (S.D.N.Y.).................. 2, 5

*Kewson v. City of Quincy,* 120 F.R.D. 6 (D. Mass, 1988) ................................................. 12

*Manufacturing Sys., Inc. of Milwaukee v. Computer Tech.,* 99 F.R.D. 335 (E.D. Wis.

      1983). ....................................................................................................................... 16

*Obiajuluv v. Rochester,* 166 F.R.D. 293 (W.D.N.Y. 1996)............................................... 14

*Techsearch Services, Inc. v. Gorman,* 1999 WL 33024 (S.D.N.Y.)................................. 12

*Car v. The Queens Long Medical Group P.C.,* 2003 WL 169793 (S.D.N.Y.);................ 12

*Update Art. Inc. v. Modin Publishing Ltd.,* 843 F.2d 67 (2d Cir. 1988)........................... 18

**Rules**

Fed.R.Civ.P. 26................................................................................................................ 16

Fed.R.Civ.P. 26(a)(1)(A)(i) ............................................................................................. 4

Fed.R.Civ.P. 33 (b)  ......................................................................................................... 17

Fed.R.Civ.P. 33(b)(4)................................................................................................. 12, 15

Fed.R.Civ.P. 34 ............................................................................................................... 13

Fed.R.Civ.P. 34(b)(2)(B) and (C) ...................................................................... 13

Fed.R.Civ.P. 37 .............................................................................................. 18

Fed.R.Civ.P. 37(a) ..................................................................................... 1, 11

Fed.R.Civ.P. 37(a)(5) ...................................................................................... 11

Fed.R.Civ.P. 37 (b) ........................................................................................... 1

Fed.R.Civ.P. 37(b)(2) ...................................................................................... 18

Fed.R.Civ.P. 37(b)(2)(A)(i)-(vi) ...................................................................... 16

Fed.R.Civ.P. 37(d)(1)(A)(ii) ............................................................................ 16

Fed.R.Civ.P. 37(d) ............................................................................................ 1

Fed.R.Civ.P. 37(d)(3) ...................................................................................... 16

Fed.R.Evid. 4 ................................................................................................... 15

Fed.R.Evid. 408 ............................................................................... 5, 6, 15, 16

Local Rule 26.2 ................................................................................................ 15

Gary Trachten (GT5480)
Alisa L. Silverstein (AS2926)
**KUDMAN TRACHTEN ALOE LLP**
350 Fifth Avenue, Suite 4400
New York, New York 10118
(212) 868-1010
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X    ECF Case
SAMUEL A. JUDD,                                                                  07 Civ. 7932 (GEL)(HP)

                                              Plaintiff,

                                                                      **PLAINTIFF'S    MEMORANDUM**
                   -against-                                **OF  LAW  IN  SUPPORT  OF**
                                                                      **MOTION TO COMPEL ETC.____**

TAKE-TWO INTERACTIVE SOFTWARE, INC.,

                                              Defendant.
-----------------------------------------------------------X

**<u>Introduction</u>**

      The plaintiff, Samuel A. Judd, submits this Memorandum of Law in support of his

motion, pursuant to Fed.R.Civ.P. 37(a),(b) and (d) for an Order (a) compelling the

defendant to by a date certain provide complete disclosure responsive to the

interrogatories and document demands that the plaintiff served on December 31, 2007,

(b) deeming waived all objections to all such discovery demands, (c) requiring the

defendant to pay to the plaintiff his expenses incurred (and to be incurred) in making this

motion, (d) providing for such other sanctions that the Court deems warranted.  The

plaintiff also moves for a (e) further revision of the Case Management Plan to account for

the delay in the discovery process thus far.

**Procedural History and Relevant Facts**

A more complete statement of the relevant facts are set forth in the accompanying May 1, 2008 Declaration of Gary Trachten, attorney for the plaintiff, and in the plaintiff's portion of the parties' March 27, 2008 joint letter to the Court (Exhibit A to that Declaration) in which letter Mr. Trachten attested to the truth of the statements made by him therein.  What follows is a summary of the record:

This is an action for breach of contract by Samuel A. Judd, a former Senior Vice President of the defendant Take-Two Interactive Software, Inc. (Take-Two").  Mr. Judd complains that (a) he was not paid bonuses to which he was expressly "entitled" under his written employment contract, and (b) he was not paid the severance sum and other benefits to which he was contractually entitled upon his having terminated his employment for contractual "Good Reason", *i.e.*, a material diminution of his position. The Complaint seeks damages in the amount of not less one million four hundred thirty ($1,430,000.00) dollars and other relief.

The Complaint was filed on September 10, 2007 and, pursuant to a stipulation extending the defendant's time to answer, issue was joined on October 9, 2007.  A conference with the Court was held and a Case Management Plan was entered on November 30, 2007.  The defendant served its Initial Disclosures on December 17, 2007 and thereafter ignored the plaintiff's prompt and repeated communications regarding their deficiencies until in late March, 2008, when the plaintiff first sought judicial intervention. Thereafter, on April 8, 2008, in order to comply with this Court's April 3, 2008 decision, characterizing as "meritless" the defendant's argument for withholding certain disclosures, 2008 WL 906076, the defendant served Amended and Supplemental Initial Disclosures.

On December 28, 2007, the plaintiff timely served by hand its First Set of Interrogatories and First Request for Production. These are the discovery demands that are at issue on this motion. In response to a telephone request from the defendant twenty-seven (27) days later, the plaintiff stipulated to extending the defendant's time to respond to the discovery until February 20, 2008.

On February 19, 2008, the defendant's attorney requested from the plaintiff a further extension but declined to offer a reason for why it was warranted except to state that her client had been "distracted" for reasons that she was not at liberty to disclose.[1] The plaintiff's counsel advised the defendant's counsel that under the circumstances of her non-explanation and there having been a prior extension, if her client wanted additional time, she should make an application to the Court. Although she said she would do so, she did not do so. Still, no responses were served by the stipulated deadline.

A couple of days later, the defendant served woefully deficient responses (as described in the Trachten Declaration, Exhibit A, p. 4, and shown in Exhibits E and F to the Declaration). The defendant waited until then, eight (8) weeks after the discovery demands were served, to first introduce its demand that much of its production be conditioned on the parties agreeing to a stipulation for a confidentiality order. Negotiations on the terms of such a stipulation ensued for weeks without resolution, mostly attributable to defendant non-responsiveness. After the plaintiff concluded that its

---

[1] It now appears from press reports and from counsel's subsequent communication to the Court in the parties' March 27, 2008 joint letter that she was referring to a hostile take-over bid. However, the defendant has yet to offer competent evidence, by persons with first hand personal knowledge, concerning why and how the circumstances allegedly so distracted the defendant and so monopolized its allegedly available "limited resources" (to quote from the letter) that it could not meet its discovery obligations. While the take-over bid could have been the reason for the defendant's non-compliance, it could also have been asserted as a pretext for an arrogant low prioritization of discovery obligations.

attempts to confer with adverse counsel to resolve the issues of deficient discovery and otherwise move discovery forward were proving futile and leading only to more delay, the plaintiff initiated a joint-letter to the Court.  That letter was completed and delivered to Chambers on March 27, 2008.

In the joint letter, the defendant's counsel stated that the defendant "appreciates the frustration which plaintiff writes: [sic]" and (as if she had personal knowledge) asserted that the defendant had not intentionally withheld or delayed production "of relevant materials necessary to the prosecution or defense of this claim," contending that the defendant had "necessarily been forced to divert its limited resources to the continuing viability of Take-Two as a corporate entity."[2]  The defendant asked for an extension of the *overall* discovery deadline, but did not propose or suggest that any deadline be imposed for *its* outstanding obligations, stating:

> Additional time will allow Defendant to re-shift and re-prioritize its focus, and give this matter the attention it unquestionably deserves.

The defendant also contended in the March 27, 2008 letter to the Court that, despite the clear language of Fed.R.Civ.P. 26(a)(1)(A)(i), it was justified in refusing to provide in its Initial Disclosures the addresses and telephone numbers of its ex-employees in order thereby to unilaterally (without seeking a protective order[3]) "preclude plaintiff

---

[2] The take-over bid apparently concerns *not* the Take-Two's "viability" but the future of its ownership, control and management.  According to press reports, Take-Two's current release of its video game product, Grand Theft Auto IV, is expected to result in $300,000,000.00 in sales at retail between approximately when this motion is submitted and when it is heard.

[3] Defendant's counsel asserted in the letter that it had already staked out that position at the November 30, 2007 Case Management Conference.  While there was some discussion about the plaintiff's concern that informal access to ex-employees not be monopolized by the defendant, neither of the plaintiff's appearing attorneys recalls being alerted at the Conference to the defendant's intended refusal to supply addresses and phone numbers of the ex-employees.

from attempting to conduct *ex parte* interviews of former employees of the defendant who will assist defendant in defending this case."

The Court, responding to the March 27, 2008 joint-letter applications, issued a decision on April 3, 2008.  With respect to the defendant's failures and delays in providing the discovery, the Court noted the aforequoted assurance of the defendant's counsel and, in effect, *qualifiedly* gave the defendant another chance stating: "On the assumption that defendant will make now this case a priority, the discovery process will be extended for a period of 6 weeks."  However no judicial deadline was set for the defendant's finalizing responses to discovery demands that by then had been served more than three (3) months earlier.  On the other hand, no express judicial relief was granted to the defendant with respect to the stipulated-to February 20, 2008 deadline.  With respect to the issue of the defendant's withholding contact information for its former employees, the Court ruled: "Defendant's position is meritless."  *Judd v. Take-Two Interactive Software, Inc.*, 2008 WL 906706 (S.D.N.Y.)

Pending the Court's response to the March 27, 2008 joint letter, the plaintiff continued to try and move discovery forward by identifying in a March 31, 2008 letter to the defendant's counsel deficiencies in the defendant's discovery responses, requesting that they be cured.  The letter, in which the plaintiff cited governing rules and applicable case law, took issue with the defendant's use of superfluous and/or "general" objections that obfuscate whether documents are being withheld, or not searched for, pursuant to the objections.  The letter also took issue with the defendant's reliance on Fed.R.Evid. 408, a rule of evidentiary admissibility, in objection to certain production.  The plaintiff commends the letter, Exhibit G to Trachten Declaration, to the Court's attention.

Pending a judicial response to the parties' March 27, 2008 letter, the defendant did not communicate with the plaintiff – not even to comment on or otherwise respond to the plaintiff's last (March 19) proposed draft of a stipulation for a confidentiality order. Upon the issuance of the Court's decision, the defendant then acquiesced in that draft that it had sat on for two weeks.  At the same time, the defendant's counsel responded to the plaintiff's aforementioned March 31, 2008 letter, making the following comment *and commitment:*

> Finally, although we do not agree with all of the conclusions reached in your March 31, 2008 letter, we will also serve revised interrogatory and documentary responses.

As of this writing, no such revised responses were served.

On April 4, 2008, the defendant served (both responsive and unresponsive) documents stating them to be responsive, but not representing them to be *fully* responsive, to only ten (10) of the thirty (30) Requests made.  Every single document produced, no matter how innocuous, was designated by the defendant to be "Confidential".  With respect to the other twenty (20) Requests, the defendant's written responses had committed to produce documents (often qualified by "if any") to all but four (4) Requests, *i.e.*, (a) Req. no. 8 – while reserving (seeming superfluous) objections, stating "Defendant is not aware of any responsive documents"; (b) Req. no. 19 – while reserving (seeming superfluous) objections, stating "Defendant states that there are no documents responsive to this request"; (c) Req. no. 24 – objecting on numerous grounds including (without regard to the entry of a confidentiality order) invasion of privacy rights on non-party current and former employees; and (d) Req. no. 28 – objecting, including on Fed.R.Evid. 408 grounds.  (It may be noteworthy that while the defendant's

written response had objected in full to producing any documents responsive to Req. nos. 25 and 27, its cover letter indicated that documents produced were responsive, in part to those Requests.)

The defendant's April 4, 2008 cover letter also indicated that, with respect to e-discovery, it was then revising its search terms in an effort to exclude the review of voluminous, irrelevant materials.  However, since that time (nearly a month), the defendant has neither supplemented its production or otherwise communicated with the plaintiff in its regard.

During April, 2008, the plaintiff wrote to the defendant two more letters concerning discovery – one on April 11, and another on April 14, to which the defendant has responded to neither.

The April 11 letter (Exhibit I to the Trachten Declaration) raised issues about (a) the defendant's unilateral redaction of documents without explanation despite that a confidentiality order is in place, (b) the defendant's failure to  provide a privilege log despite that such a log is a mandatory condition for withholding documents pursuant to a privilege, (c) the defendant's wholesale designation of all documents as "Confidential", and (d) whether a substantial "hole" in Bates stamp designations of produced documents reflected any confusion about what had actually been produced.  That letter requested specific resolutions of the issues raised and invited discussion on how the issues might otherwise be resolved.  The defendant has not responded.

The April 14 letter (Exhibit J to the Trachten Declaration) sought to both provide and obtain clarification concerning outstanding discovery demands.  The defendant has not responded.

## Overview of Discovery Sought and Its Relevance

The plaintiff asserts two claims, failure to pay bonuses and failure to pay a severance due on resignation for diminution of position.

Samuel Judd's three-year employment contract expressly entitles him to receive an annual bonus, providing for a specific "Target Bonus", at $275,000, based on quantitative and qualitative performance targets to be mutually agreed upon, subject to discretionary adjustment based on company performance.  Except for a small pro-rated bonus for the few months that Mr. Judd worked at the end of the first fiscal year, Mr. Judd received no bonus during the three year term.   Judd contends that Take-Two breached the contract, and its duty of good faith and fair dealing thereunder, by not proposing, setting, or engaging with Mr. Judd concerning, any performance targets. Take-Two essentially treated the contract's bonus provision as if it were not a contractual obligation at all.  Indeed, what little discovery that has been provided shows Take-Two's assigning (but not paying) Mr. Judd a Target Bonus for an amount less than contracted for, even as (it appears) no consideration was given to performance targets for him. Moreover, although overall company performance could conceivably have in good faith informed the company's discretion with regard to his bonus, Mr. Judd claims that any such discretion was in fact exercised in bad faith, or not at all, to unlawfully deprive him of the fruits of his contract.

In order to demonstrate Take-Two's bad faith, Mr. Judd seeks thorough and complete discovery of Take-Two's bonus policies and practices during the relevant period.  Mr. Judd anticipates that a complete practice of those policies and practices will demonstrate that his treatment *vis a vis* bonus-related practices was sufficiently anomalous and unfair to show Take-Two's bad faith.

Mr. Judd's contract expressly entitles him to a one year (salary plus last bonus) severance and certain equity rights if, during the employment term, his position of authority is materially diminished and the diminishment is not timely cured upon notice. In the months preceding his having given such notice, there had been a fairly complete change in the control of the company's Board and senior officers. While such officers were for the most part paid considerable termination packages, Mr. Judd was not. His contract was soon to expire. However, as the change of control also quickly came to result in changes and adjustments to the allocations of executive level responsibility and authority, Take-Two "jumped the gun" and materially reduced Mr. Judd's substantive authority and responsibility before the term expired, thus triggering the severance entitlement. Mr. Judd seeks thorough and complete discovery about the allocation and reallocation of executive responsibility and authority before and after the change of control in order to adduce evidence of the diminishment of his position in the waning months of his term.

In connection with his investigative search for evidence (and making it efficient), discovery and trial preparation, Mr. Judd also seeks information about the continuing relationships that ex-employees have with the defendant. Such information is useful to determining witness availability for investigation, potential witness bias, and what responsibility the defendant has to itself obtain information from ex-employees in order to meet its discovery obligations.[4] By way of example of the hurdles faced by Mr. Judd,

---

[4] As to the latter, see e.g. *In re Folding Carton Antitrust Litigation,* 76 F.R.D. 420 (N.D.Ill. 1977) and its progeny.

we bring to the Court's attention the following provision found in a produced Separation

Agreement between Take-Two and a former senior executive:[5]

> **No Participation in Third Party Civil Litigation.**
> The executive agrees and promises not to voluntarily
> participate, without receiving the prior written approval of
> the Company, in any pending or future civil case,
> arbitration, agency proceeding, or other legal proceeding
> brought against the Company by a non-Governmental third
> party (**Third Party Civil Litigation**) with respect to any
> issue whatsoever. The Executive also agrees that he will
> not intentionally cause, encourage, or participate in any
> Third Party Civil Litigation maintained or instituted against
> the Company. Specifically, among other things, this
> Section 9 is *intended to preclude the Executive from (a)*
> *voluntarily providing any party involved in a Third Party*
> *Civil Litigation, as defined above, against the Company*
> *with any statement, oral or written, sworn or unsworn, to*
> *be used in connection with that Third Party Civil*
> *Litigation, and/or (b) voluntarily appearing for the purpose*
> *of providing deposition or trial testimony at such party's*
> *request without the prior written approval of the company.*

(emphasis added)

This provision appears to reflect a corporate practice of attempting to prevent truthful

information from reaching persons who might be entitled to compensation from Take-

Two as a result of wrongdoing by Take-Two.

**Argument:**

POINT I                         **THE COURT SHOULD ISSUE AN ORDER**
                                **COMPELLING THE DEFENDANT TO**
                                **FULLY ANSWER AND RESPOND TO, BY A**
                                **SOON DATE CERTAIN, THE DISCOVERY**
                                **DEMANDS SERVED DECEMBER 28, 2007.**

The record shows no doubt but that (despite efforts by the plaintiff to confer and

eliminate or reduce the need for judicial intervention) the defendant's responses to both

---

[5] Because the agreement was designated as "Confidential", the name and title of this former senior officer
is not herein disclosed.

10

the interrogatories and document requests served on December 28, 2007 have been both (a) late, in whole, and (b) woefully deficient insofar as made late. Fed.R.Civ.P. 37(a) provides a remedy for such failure of duty in the form of Order compelling disclosure. The plaintiff proposes that such an Order mandate full compliance by no later than May 16, 2008, *i.e:* 140 days from when they were served. This proposal contemplates that the defendant's searching for and production of documents will commence during the pendency of this motion.

POINT II                    **DUE DISCLOSURE NOT HAVING BEEN PROVIDED PRIOR TO THE FILING OF THIS MOTION, AND THE NON-DISCLOSURE NOT BEING SUBSTANTIALLY JUSTIFIED, THE COURT *MUST* REQUIRE DEFENDANT TO PAY PLAINTIFF'S EXPENSES ON THIS MOTION.**

This branch of the motion is governed by Fed.R.Civ.P. 37(a)(5) under which relief to the plaintiff is expressly mandatory, subject to limited exceptions upon which the defendant may be heard.[6] The Rule is not so much one providing for a sanction as it is an authorization of a just allocation of certain litigation expenses when one party's action or inaction causes the other party to expend resources merely to enforce clearly governing rules. Long before this motion, Mr. Judd had already been put through an extraordinary expenditure of resources pursuing discovery to which he is entitled, as is readily shown on this record.

---

[6] Any claim of facts showing "substantial justification" for non-disclosure should be by competent evidence by persons having personal knowledge.

**POINT III**      **ALL OF THE DEFENDANT'S OBJECTIONS TO THE DISCOVERY SOUGHT SHOULD BE DEEMED WAIVED AND/OR DETERMINED TO BE TOO GENERAL, OBFUSCATORY OR OTHERWISE INSUFFICIENT.**

A.    <u>Late Responses</u>

In the first instance, since *no* interrogatories and *no* responses to the document request were served within the time allowed even as extended by agreement, all objections were thereby waived.  Rule 33(b)(4)  is explicit on the point:

> Objections.  The grounds for objecting to an interrogatory must be stated with specifity.  Any ground not stated in a *timely* objection is waived unless the Court *for good cause*, excuses the failure.

(emphasis supplied).  Court's have applied the same principle of waiver to responses to document requests.  *See Techsearch Services, Inc. v. Gorman,* 1999 WL 33024*2 (S.D.N.Y.) ("Failure to respond timely to a party's request for documents result in a waiver of all objections which could have been seasonably asserted.")  *See also, Cliffstar Corporation Sunsweet Growers, Inc.*, 218 F.R.D. 65, 69 (W.D.N.Y. 2003); *Carr v. The Queens Long Medical Group P.C.,* 2003 WL 169793*5 (S.D.N.Y.); *Kewson v. City of Quincy,* 120 F.R.D. 6 (D. Mass, 1988).  Although "something" was served only a couple of days late, the magnitude of the insufficiency of what was served, the continuing insufficiency and long delay, the defendant's failure to keep its commitment to "give this matter the attention it unquestionably deserves", all militate against excusing the delay.  Although subsequent curative conduct could have served as a good cause factor for excusing the defendant from its conduct, no such conduct has been exhibited.

B.    <u>General and/or Superfluous Objections</u>

The plaintiff's briefing here on this point will not be new to the defendant.  It is largely a restatement of the March 31, 2008 letter that the plaintiff sent to defendant in an

effort to demonstrate the merit of its position on the point and, it had been hoped, bring about compliance without resort to motion practice.

The plaintiff submits that it is improper for a party responding to a Rule 34 demand to do so with a laundry list of "general objections" that purports to make the responses to individual requests subject to all of, or unspecified, general objections.

In accordance with their specific text, Rule 34(b)(2)(B) and (C) require responses that, with respect to *each* category of documents sought, state either that (a) the production will be made (without reservation), or (b) the production will not be made, or will only partially be made, because of one or more *specific* objections, the reasons for which being stated. Unless documents responsive to a request are being withheld or the defendant contends that it is somehow excused from making a diligent search for them, then there is no reason for the defendant to make or "reserve" an objection to a request. (Production does not waive evidentiary objections.) Only applicable, operative and explained objections have any proper place in response to a document request.

Responses that state (as so many of the defendant's responses thus far) that "notwithstanding [the stated] objections, subject to the general objections, and without prejudice to Defendant's position, Defendant will produce documents responsive to this request" do not comply with Rule 34. Does such a response mean that *all* responsive documents will be produced? If so, what purpose does the objection serve? Objections are not reservation devices; they are mechanisms for joining the issue of the extent to which certain discovery demands must be complied with. If what the defendant will produce is less than *all* responsive documents, the plaintiff is entitled to a response that does not obfuscate the limited scope of the production. There is a meaningful distinction

13

between producing responsive documents "subject to" objection, on one hand, and producing *all* responsive documents *despite* objection, on the other.

In *Obiajuluv v. Rochester,* 166 F.R.D. 293, 295 (W.D.N.Y. 1996), the court noted that it found itself "compelled to comment generally on the type of objections" before it – "objections that invariably recite virtually the same verbiage to each document request", repeating the same "familiar boilerplate" with respect to each and every request. The court stated:

> Such pat, generic, non-specific objections, or words intoning the same boilerplate language, are inconsistent with the letter and spirit of the Federal Rules of Civil Procedure. An objection to a document request must clearly set forth the specifics of the objection and how that objection relates to the documents being demanded. [citation omitted] The burden is on the party resisting discovery to clarify and explain precisely why its objections are proper… A party opposing a discovery request cannot make conclusory allegations that a request is irrelevant, immaterial, unduly burdensome or overly broad. Instead the party resisting discovery must show specifically each discovery request is irrelevant, immaterial, unduly burdensome or overly broad.

Another case that discusses the proper function of discovery objections and disapproves of "a 'laundry list' of objections that were merely conclusory and invalid" is *Elkay Manufacturing Co. v. Ebco Manufacturing Co.,* 1995 WL 389822*7 (N.D.Ill.). More recently, the court in *Fisher v. Baltimore Life Insurance Co.,* 235 F.R.D. 617, 624 (N.D.Va. 2006), stated the rule succinctly:

> [G]eneral objections to interrogatories and requests for production of documents are prohibited.

See also, *Fisher, id.,* at 622-23; *Momah v. Albert Einstein Medical Center,* 164 F.R.D. 412, 417 (E.D. Pa. 1996).

With respect to the requirement of specificity in objections to interrogatories, Rule 33(b)(4) is no less (and perhaps more) stringent that the requirement in responding to document requests.  Under that Rule, any objection to an interrogatory not stated timely *and "with specificity" is waived* (unless the court for good cause excuses the failure).

Accordingly, if not deemed waived by reason of the section A of this point, the plaintiff requests that this Court's order in resolving this motion (a) strike the defendant's "General Objections, Comments, and Qualifications" that precede its discovery responses, (b) require that each objection to individual interrogatories and document requests explain why it is applicable to the particular request, (c) require that the defendant clarify, where specific objections may be made, whether any documents are being withheld or not searched for.

C.    Privilege Objections and Privilege Log

If the attorney-client privilege is not deemed waived by reason of section A to this Point, it should nonetheless be deemed waived for the defendant's failure to provide the privilege log required by Local Rule 26.2, despite being put on notice of its failure of compliance.  Where there is a failure of compliance, the privilege objection should be stricken and the privilege deemed waived with respect to the discovery demand.

D.    Fed.R.Evid. 408 Objections

In connection with Document Request nos. 27 and 28, and Interrogatory nos. 21 and 22, the defendant cited Fed.R.Evid. 408 as a basis for objections, asserting that the objection applies because the requests call for information or documents "utilized during settlement negotiations."   The plaintiff submits that the Rule 408 objections are ill conceived and should be stricken.

First, Rule 408 (part of Article IV of the Federal Rules of Evidence) is an exclusory rule of evidentiary legal relevancy (regardless of logical relevance). It creates neither a privilege (the subject of Article V) nor a rule of discoverability. Just as hearsay may be inadmissible at trial but nonetheless be discoverable under Fed.R.Civ.P. 26 standards, the same is true for evidence that is inadmissible at trial under Rule 408, but meets Rule 26 discoverability standards. *E.g. City of Wichita v. Aero Holdings, Inc.*, 192 F.R.D. 300 (D. Kan. 2000); *Manufacturing Sys., Inc. of Milwaukee v. Computer Tech.,* 99 F.R.D. 335 (E.D. Wis. 1983).

Second, even as a rule of evidence, Rule 408 does not render inadmissible any document or information merely because it was "utilized during settlement negotiations". Rather, the exclusory rule is limited to evidence of (a) offers or acceptances of consideration in efforts to compromise a claim in dispute, and (b) conduct or statements made in compromise negotiations. As it expressly states, the Rule "does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations."

**POINT IV**        **IN THE CIRCUMSTANCES OF THIS CASE, ADDITIONAL SANCTIONS ARE WARRANTED UNDER FED.R.CIV.P.37(d)(1)(A)(ii) AND 37(b)(2).**

Fed.R.Civ.P. 37(d)(1)(A)(ii) provides for sanctions, (in addition to an award of expenses) against a party who fails to answer interrogatories or fails to respond to a document request. Rule 37(d)(3) incorporates for that purpose the extensive list of sanctions available for violation of a discovery order, set out in Fed.R.Civ.P. 37(b)(2)(A)(i)-(vi), providing that they are not exclusive of awarding expenses to the movant.

The plaintiff acknowledges that, as a general rule, Rule 37(d)(1)(A)(ii) is regarded as reserved for a complete failure to serve responses, and is inapplicable to merely late and/or deficient responses.  However, courts have made exceptions to that general rule in cases such as where the responses are so incomplete or evasive that they are fairly characterized as "tantamount to no answer at all."  *See, Airtex Corporation v. Shelley Radiant Ceiling Co.,* 536 F.2d 145, 155 (7th Cir. 1976).  The plaintiff submits that the instant case fits within an appropriate exception.

A review of the record will show that, even as of this late date, the defendant has provided answers to only four (4) of the twenty-three (23) interrogatories, relying on fairly preposterous contentions of its not understanding words and terms such as "executive employees", "information technology", "participated", "generally", "management", "purchasing" and other common words to justify not responding based on objections of vagueness.  That is tantamount to no response at all, especially since the defendant also provide *no* answers, not one, *under oath* as required by Rule 33(b)(3). The failure to verify the few answers given has persisted for more than a month after the plaintiff pointed out that deficiency in a March 31, 2008 letter.

As previously noted, there has not been any production with respect to more than half of the document requests, not counting the requests for which there was no production where there was upon objection having be made in toto or where the defendant responded merely that it "is not aware of responsive documents."

The plaintiff submits also that the Court's April 3, 2008 decision may fairly be regarded as tantamount to an order compelling discovery, giving judicial voice to the

defendant's commitment to re-prioritize and give this matter the attention it deserves.  If the Court agrees, sanctions are properly imposed under Rule 37(b)(2).

Finally the plaintiff urges that the matter of sanctions should be informed by the defendant's overall conduct in discovery.  Plainly, the defendant's inactions evidence a contemptuousness toward the applicable rules and disrespect of the Court; the defendant having behaved (or not behaved) just as badly – indeed worse – after the Court's ruling than before it.  When appropriate to the circumstances, as here, fairly harsh sanctions should be imposed "to achieve the purpose of Rule 37 as a credible deterrent rather than as a `paper tiger`."  *Update Art. Inc. v. Modin Publishing Ltd.,* 843 F.2d 67, 71 (2dCir. 1988).  The plaintiff, without specific recommendation, submits to the Court's discretion what sanctions are appropriate and warranted.

**<u>Conclusion</u>**

      For all of the foregoing reasons, the plaintiff respectfully urges the Court to grant

the relief he seeks on this motion.

Dated: New York, New York
       May 2, 2008

                                Respectfully submitted,

                                KUDMAN TRACHTEN ALOE LLP
                                Attorneys for Plaintiff

                                By:   **<u>s/Gary Trachten</u>**
                                   Gary Trachten (GT5480)

                                By:   **<u>s/Alisa L. Silverstein</u>**
                                   Alisa L Silverstein (AS2926)