# KUDMAN TRACHTEN ALOE LLP
### ATTORNEYS AT LAW

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4400
NEW YORK, NY 10118
(212) 868-1010

TELECOPIER (212) 868-0013
www.kudmanlaw.com

PAUL H. ALOE†
STUART R. KUDMAN*
GARY TRACHTEN††

MICHELLE S. BABBITT*

THOMAS M. FURTH**

MATTHEW H. COHEN*
WILLIAM E. HAMMOND**
JOHN S.LEGO***
ALISA L. SILVERSTEIN*

_____

*ADMITTED IN NY & NJ
**ADMITTED IN NY ONLY
***ADMITTED IN NY & CA
†ADMITTED IN NY, NJ & PA
††ADMITTED IN NY, NJ, CT & GA

March 27, 2008

Hon. Gerard E. Lynch
United States District Judge
United States Courthouse
500 Pearl Street
Room 910
New York, New York 10007

> **Re:** **Samuel A. Judd v. Take-Two Interactive Software, Inc.**
> **07 Civ. 7932 (GEL)**
> **Our File No. 2923.01**

Dear Judge Lynch:

We write a joint letter of the parties concerning discovery issues.

## I. Plaintiff's Counsel Section

By this letter, I certify that all the facts stated herein are true correct, and show pursuant to Fed.R.Civ.P. 37(a)(2)(A) that the plaintiff has made many repeated efforts to confer with the defendant about its deficient disclosure, to no avail. In light of what is shown below, we request that the Court dispense with any obligation of further joint party efforts to resolve discovery issues as they are highly likely to be futile, and that the Court intervene and schedule an informal discovery conference pursuant to Local Rule 37.2.

I write this letter to Your Honor in utter frustration. The frustration derives not only from the defendant's refusal thus far to provide anything beyond negligible disclosure (in both amount and significance), but more troublingly, from the defendant's dismissively lackadaisical refusal to timely or attentively engage with us in good faith in an effort to resolve discovery disputes or narrow the discovery issues that will need judicial resolution.

In my nearly thirty years of practice, I have always tried to engage in the "good practice" of collegially extending reasonable courtesies to my adversaries; respecting the judicial

# KUDMAN TRACHTEN ALOE LLP

Hon. Gerard E. Lynch
March 27, 2008
Page 2

preference for having lawyers work out discovery differences for themselves, or at least narrow the issues that are given to judicial attention; and trusting that my adversaries will have a fair degree of respect for the process and their adversary such that they will be appropriately attentive to their obligation to in good faith move proper discovery along in a timely manner. Regrettably, however, at some point those good practices (regardless of whether purposefully taken advantage of by an adversary) can become risky, and they must give way to the protecting against the risk that the ticking discovery time clock will prejudice my client or so squeeze me so as to subject me to an oppressively difficult pre-trial and trial schedule.

As of this writing, after noon on March 25, 2008, the defendant has only moments ago replied by voice message to my most recent correspondence on this matter in which I "for the umpteenth time" tried to enlist the defendant in conferring in good faith about discovery issues, *i.e.* my March 20, 2008 letter to the defendant's lead counsel, Kathleen McKenna, (which I also simultaneously emailed to the two other lawyers for the defendant on this case), annexed as Exhibit A. The voice message response seeks yet more of what has been a plainly unacceptable level of delay and avoidance in dealing with discovery issues. Therefore, I seek the Court's intervention.

Issue was joined on October 9, 2007. The case management conference was held on November 30, 2007. I offer the following history concerning discovery in this case.[1]

- **Initial Disclosures** – On **December 15, 2007**, the plaintiff received the defendant's Initial Disclosures. We found those disclosures to be non-compliant with the governing rule. Therefore, by letter dated **December 18, 2007**, Exhibit B, Alisa Silverstein, Esq. of my office outlined the deficiencies we perceived, and requested compliance and also requested to be advised of the defendant's intention in that regard so that we might thereupon "confer in good faith about resolving any differences that we have concerning the matter." *To date, despite later repeated requests to the defendant's counsel that the issues raised in that letter be responded to, the defendants' attorneys have neither answered the aforementioned letter nor otherwise communicated with us in its regard.*

- **Plaintiff's Interrogatories** – On **December 28, 2007**, the plaintiff served by hand on that day his First (and only) Set of Interrogatories on the defendant. These twenty-three interrogatories comply with the limitations in Local Rule 33.3 so they essentially merely seek witness identification which will allow the plaintiff to efficiently continue his investigation and plan for who should be deposed.

---

[1] The discovery history discussed by the plaintiff below concerns only the defendant's discovery obligations. The plaintiff timely served his initial disclosures on December 13, 2007, and *sua sponte* amended initial disclosures on December 19, 2007. By February 5, 2008, the plaintiff had timely responded to the defendant's interrogatories and document requests. As of the date of this writing, the defendant has neither indicated nor made any suggestion that the plaintiff's discovery responses were in any manner incomplete or deficient.

# KUDMAN TRACHTEN ALOE LLP

Hon. Gerard E. Lynch
March 27, 2008
Page 3

- **Plaintiff's Request for Production** – On **December 28, 2007**, the plaintiff also served by hand his First (and only) Request for Production, requesting that the requested documents be produced for inspection and copying on **January 31, 2008.**

- **Defendants' First Request for an Extension** – On **January 24, 2008,** I received a telephone call from Ian Schaefer, one of the defendant's attorneys.  Mr. Schaefer requested an extension of the defendant's time to respond to the plaintiff's interrogatories and document request explaining that a pressing personal circumstance of Thomas McKinney (who had been the associate on the case) that took him out of work had precipitated the request.  We agreed to a "twenty (20) day" (actually 24 days) extension making the responses due on February 20, 2008.

- **Follow Up Request to December 18 Letter** – On **December 31, 2007,** I emailed to Kathleen McKenna courtesy electronic copies of the plaintiff's discovery requests under cover of an email, Exhibit C, which advised "we still await a response to [Alisa Silverstein's] 12/18 letter to Tom McKinney about the deficiencies in Take-Two's Initial Disclosures", requesting that she give the matter her "prompt attention".  Also, during my January 24, 2008 conversation with Mr. Scheafer in which he requested the discovery extension, I advised him that we were still awaiting a response to Ms. Silverstein's written communication to Mr. McKinney regarding the deficiencies in the defendants' Initial Disclosures and also that Ms. McKenna had not responded to an email from me in that regard.  I asked him to get back to us on that, or to have Kathleen McKenna do so. *However, the defendant's attorneys never responded to any of the three (3) (2 in writing) communications concerning the matter.*  We then made a decision to defer trying to resolve the issue of those deficiencies because we expected that some of the information might anyway be disclosed by responses to our discovery demands, and because we were of the view that it would be more efficient to have a single resolution conference for those issues along with any issues that the defendant's expected responses would give rise to.

- **Defendant's Request for Another Extension** – On **Sunday, February 17, 2008,** I picked up a voice message from Kathleen McKenna where she indicated that it was urgent that I call her cell phone sometime that holiday weekend, but stated no reason for the imperative.  After my leaving her voice messages on that and the next day, we spoke on **February 19, 2008.**  In that call, Ms. McKenna requested a further extension for responding to the plaintiff's discovery demands, but would not give a reason except to say that her client had been "distracted" for reasons she was not at liberty to disclose.[2]  I advised her that under the circumstances, if the defendant wanted additional time, it should apply to the Court for it.  She said that she would so apply, but did not.

---

[2] We ultimately deduced from press reports that Ms. McKenna was likely referring to a hostile bid by another corporation to take over the defendant Take-Two.

# KUDMAN TRACHTEN ALOE LLP

Hon. Gerard E. Lynch
March 27, 2008
Page 4

- **Defendant's Late Purported Responses** – On **February 22, 2008**, we received by hand what was styled to be answers to the plaintiff's interrogatories and a response (with some production) of to the plaintiff's documents request.

  - **Interrogatory Answers** – Despite that the plaintiff's interrogatories essentially merely sought witness identification, the Defendant's Responses and Objections to the interrogatories, annexed as Exhibit D, answered only three (3) of the twenty-three interrogatories, in nearly all cases objecting on grounds that plain English terms, such as "executive employees", "information technology", "participated", "generally", "management", "purchasing", and other common words so "vague" that the interrogatory cannot be answered.

  - **Document Request Response and Production** – The defendant's response to the document request is replete with seventeen (17) "general objections" and other objections that, combined with indications that documents will be produced, obfuscate the extent to which responsive documents exist but are being withheld pursuant to objection. In a number of instances, the defendant stated that "it will produce documents, if any, responsive to [the] Request", suggesting that it still had not conducted a search to determine whether any such responsive documents exist or can be located. The defendant produced little more than the plaintiff's personnel file, some organizational charts, and a schedule showing a discrepancy between the plaintiff's contractual "target bonus" and a lower "target bonus" then assigned to him for 2006, but redacting what is apparently corresponding information concerning other executive employees. The documents produced were not organized or labeled to correspond with specific requests, and they do not appear to have been produced as kept in the ordinary course of business. About a dozen responses indicate that documents will be produced under an appropriate confidentiality stipulation; still other responses recite privacy objections without making any commitment to produce them. The attorney client privilege is invoked, but no privilege log was provided. Even where the responses indicate that documents will be produced, it remains unclear whether defendant asserts that all such documents have been produced or, if not, when the defendant will produce them. (There are also other objections and responses that the plaintiff regards as deficient.)

  - **Proposed Confidentiality Stipulation** – Seven weeks after being served with discovery requests, the defendant, for a first time, proposed that it provide some discovery only pursuant to a stipulated confidentiality agreement and protective order, and only then provided a proposed form of stipulation. The

# KUDMAN TRACHTEN ALOE LLP

Hon. Gerard E. Lynch
March 27, 2008
Page 5

proposal was unaccompanied by any allegation of any actual facts showing any existing good cause for subjecting any discovery to a protective order.

- **Plaintiff's Response to Deficient Discovery** – On Tuesday, **February 26, 2008**, (after we analyzed the discovery responses and found them to be very deficient), I sent an email to Ms. McKenna, copy annexed as Exhibit F, in which I noted (among other things) that we regarded the defendant's responses as "woefully deficient", and I requested that Ms. McKenna confer on discovery issues on **February 28, 2008**. The email also requested that if she would not then be available, she let me know of what would be her availability for a conference during the following week, after Tuesday (allowing for my very short interim vacation).

- **Defendant's "Response" to Request to Confer** - In a **February 26, 2008** email to me, Exhibit G, Ms. McKenna advised that she was not available to confer on the day that I proposed, stating further "I should know by this evening what my schedule is and will get back to you on when we might speak". *However, neither Ms. McKenna nor anyone else in her office got back to us to schedule a conference between counsel about discovery.*

- **Negotiating a Confidentiality Stipulation and Protective Order** – In early March, we came to conclude internally that it might anyway be more efficient to defer a discovery conference with the defendant until we would receive what we might receive upon entering into an acceptable confidentiality stipulation. Thus, in a **March 5, 2008** email, we counterproposed a form of confidentiality stipulation. Not yet receiving a response, we sent an email on **March 11, 2008** asking whether our proposal was acceptable (and whether the defendant was prepared to now provide the discovery that it had been withholding). Still not having received a response, we sent another email on Friday, **March 14, 2008** advising of our frustration at not receiving either an acceptable form of stipulation or the past due discovery. Later that day we received a counterproposal that we regarded as unacceptable. Over the weekend, I sent an email outlining the principles that we would accept and not accept in a Confidentiality Stipulation, asking to be advised by 5:00 p.m. on Monday, **March 17, 2008** whether those principles would or would not be acceptable. On that day we received an email indicating that more time was needed to respond. On **March 19, 2008**, the defendant sent a counterproposed form of stipulation. The following morning, I made minor modifications to the defendant-proposed form, and sent it as a form that the plaintiff would find acceptable, asking that the defendant accept it. *A clean copy of the form of Stipulation and Order that the plaintiff is willing to agree to is annexed as Exhibit H. I invite the Court to examine it for whether it is a fair and adequate form of stipulated Protective Order.* This March 25 morning, as I write this letter, I received an email from Ms. McKenna asking for yet more time to further address the matter of the stipulation. The emails and email chains referenced to in this paragraph are annexed hereto as Exhibit I.

# KUDMAN TRACHTEN ALOE LLP

Hon. Gerard E. Lynch
March 27, 2008
Page 6

- **Response to March 20 Letter** – Although Ms. McKenna's email of this morning sought more time regarding the Confidentiality Stipulation, it did not so much as acknowledge, let alone respond to, my March 20, 2008 letter (Exhibit A), in which we had requested that the parties confer on either March 26 or 27, 2008. However, this afternoon, Ian Schaefer left a voice mail message that he wanted to talk about times to confer, but advising that there would be no availability this week.

Given the above history, we regrettably have no confidence whatsoever that this case will meaningfully and fairly progress except with the Court's focused attention, intervention and supervision. Our experience tells us that efforts to engage opposition counsel produce only delay, and never progress. The defendant has heretofore treated this case as a low-priority or no-priority matter. Accordingly, by this letter application to Your Honor, we advise the defendant that we now wish to have a Local Rule 37.2 conference in lieu of making efforts to resolve discovery issues by party conference. On this March 25, 2008, we have sent our portion of this letter to the defendant's counsel, and requested that by 5:00 p.m. March 26, 2008, the defendant add its own portion and return it to us so that we may integrate it and send a joint letter. We have also advised the defendant's counsel that if there will be no compliance with this request, we will send this letter on our own and thereby request relief from your Individual Practice Rule 2.F.'s mandating that only single, jointly composed letters be sent to the Court concerning discovery disputes.

## II. Defendant's Counsel's Section

## INTRODUCTION

This case is a straightforward breach of contract claim by an executive against his former employer. Plaintiff, Samuel Judd, comfortably lived out his employment with Take-Two Interactive and then attempted to capitalize on a change in upper-management to create an entitlement to severance that simply does not exist.

Mr. Judd was employed by Take-Two as the Senior Vice President of Planning and Administration pursuant to an employment contract with a term of July 30, 2004 through July 30, 2007. Despite his contractual obligation, after serving notice that he believed that he had "good reason" to cancel the contract on May 30, 2007, Mr. Judd abruptly left on June 29, 2007, falsely claiming that his duties had been diminished in an clear attempt to trigger a contractual right to severance to which he was not, and is not, entitled. At the time of his departure, Mr. Judd had a single month remaining on his three year contract.

The issues presented by Mr. Judd's case are neither novel, nor particularly complicated, and presumably should not warrant extensive discovery. Nevertheless, with two (2) months remaining before the close of discovery, Plaintiff has chosen to burden this Court with concerns that amount to nothing more than unnecessary complaints about justifiable delays in the discovery process. As explained below, Defendant has been in the middle of a corporate

# KUDMAN TRACHTEN ALOE LLP

Hon. Gerard E. Lynch
March 27, 2008
Page 7

maelstrom, and Plaintiff's attempt to involve the Court in discovery issues at this stage appears to be a tactical move to pressure Defendant to settle this completely baseless claim by attempting to divert Take-Two's limited legal and other corporate resources from the immanent threat faced by Defendant.

## RECENT EVENTS

During the relevant discovery period (September 10, 2007 – present) (the "Relevant Discovery Period"), and particularly in the period during which Defendant's First Responses were due to the Court, The Company has been hit by a genuine corporate crisis. Most significantly, a hostile takeover bid by EA Sports. Specifically, since February 6, 2008, EA has made multiple unsolicited bids for Take-Two, each requiring analysis and a formal response in writing and numerous meetings to evaluate. In the month of February alone, there were approximately twenty meetings of the Board of Directors and committees of the Board. Adding to the burden, the take over effort, which became public on February 24, 2008 (with weeks of confidential and closed-door discussions leading up to that announcement), has led to a stockholder lawsuit. Additionally, the stockholder lawsuit required expedited discovery which, together with other extraordinary activity related to the hostile takeover bid, overwhelmed the Company's legal, IT and other resources. In March, a tender offer was made. The issues surrounding this takeover remain outstanding and pressing, as evidenced by news reports from today's New York Times. [See Exhibit I, NY Times articles; WSJ articles; Take-Two and EA Press Releases on same].

As a result, the very few, and relatively new members of the Take-Two legal department in New York (comprised of only one (1) employment attorney, one (1) corporate attorney, and zero paralegals) have, quite understandably, been unable to devote the time and attention to this matter that the client understands this matter deserves – but certainly without intention of prejudicing the Plaintiff's prosecution of his claim.

It is also critical the Court note that Take-Two is not the typical company, inasmuch as there has been tremendous upheaval in the organization over the past year, with little continuity only until recently. By way of example, of the six US-based Take-Two attorneys, only two (2) have been with Take-Two since January of 2007, and as a result, lack a certain degree of institutional knowledge. To be sure, this makes the process of culling and producing historical data (along the broad lines of categories that Plaintiff seeks) all the more challenging. Additionally, Take-Two is also currently functioning with a completely new senior management operating team (CIO, GC, CFO, CEO, Chairman) than existed a year ago (during the last months of Plaintiff's employment). This too further adds to the informational gap, and creates natural delay in identifying key players still within the organization who may have relevant knowledge of Plaintiff's claims.

To complicate matters further, during the Relevant Discovery Period, there existed an unexpected transition of this matter internally at Proskauer, wherein my associate, Mr. Thomas McKinney took an unexpected leave absence from the Firm to attend to familial obligations

# KUDMAN TRACHTEN ALOE LLP

Hon. Gerard E. Lynch
March 27, 2008
Page 8

surrounding the birth of his child, and the case was transitioned in short order to another associate, Mr. Ian Schaefer who necessarily faced a learning curve.[3]

Notwithstanding the above exigent circumstances. Plaintiff's counsel has demonstrated an unwillingness to engage in "good practice of collegiality," notwithstanding the self-serving assessment to the contrary. This case involves a relatively straightforward contract claim of a highly compensated former executive. Yet, Plaintiff's counsel ignores the magnitude of the events affecting Take-Two as a corporate entity – events which have understandably inhibited their attention in this matter to date. Furthermore, the events leading up to the submission of this letter (the most notable of which was the unnecessarily protracted negotiation of a standard Stipulation and Order of Confidentiality Agreement discussed below) further underscores the tactical motive for this letter .

In my over 25 years of practice I have generally found my adversaries appreciative of real-world business events, and how those externalities might impact pre-determined schedules that were set before those circumstances arose. Plaintiff's failure to accommodate our requests to date under these circumstances is troublesome in light of the nature and volume of discovery he seeks of Defendant in order to resolve the matter.

With that as background, I offer the following responses to Plaintiff's recitation of the procedural history of this case for the Court's consideration.

## Plaintiff's Letter of December 18 re: Rule 26 Disclosures

With respect to the deficiency letter of December 18, which was faxed on December 19, Plaintiff complained of an issue with Defendants Rule 26 disclosures that did not exist. Plaintiff incorrectly claimed that Defendant's Initial Disclosures "identify[ied] the subject of the discoverable information for only certain named person, but not others." Apparently, Plaintiff's counsel chose not to carefully read Defendant's disclosures before hastily drafting their missive. Unlike Plaintiff, who initially failed to identity the subject matter individuals had knowledge of, Defendant's disclosures made very clear what knowledge the identified individuals possessed. Defendant's responses stated that: "All individuals listed below have knowledge of Plaintiff's job duties and responsibilities, Take-Two's organizational structure, and when noted, compensation or contractual related-issues." Defendants satisfied it obligation under the Federal Rules. Thus, there was no need to respond to this portion of Plaintiff's letter.

As to the last known addresses of individuals identified by Defendant as having knowledge related this case, continue to maintain the position we took at the conference before this Court. That is, that Defendant would only provide the address and phone number of Defendant's counsel for former Take-Two employees so as to preclude Plaintiff from attempting to conduct *ex parte* interviews of former employees of the Defendant who will assist Defendant in

---

[3] Mr. McKinney returned to the Firm on March 3, and was recently re-staffed on this case along with Mr. Schaefer.

# KUDMAN TRACHTEN ALOE LLP

Hon. Gerard E. Lynch
March 27, 2008
Page 9

defending this case. Although we believe Plaintiff already knows who is a current employee of Take-Two and who is a former employee of Take-Two, to avoid any confusion we sent Plaintiff a letter identifying which of the individuals identified in the Initial Disclosures are current employees of Take-Two.

Even though ex parte contact with former employees is not generally prohibited, in this case, Defendant is justified in taking such action because those former employees who are alleged to have taken actions that breached Plaintiff's employment contract case likely had access to privileged information. Kingsway Fin. Servs. v. PriceWaterhouse-Coopers LLP, 03 Civ. 5560, 2006 U.S. Dist. LEXIS 35615 at *14-15 ("Where the former employee or employees in issue had access to information that was subject to a privilege enjoyed by the former employer, special procedures are routinely utilized to guard against the risk of inadvertent disclosure of privileged information by the former employee. See generally Katt v. New York City Police Dep't, 95 Civ. 8283, 1997 U.S. Dist. LEXIS 10014 (S.D.N.Y. July 14, 1997).").

In addition, almost all relevant events took place during the tenure of executives who are no longer with the Company due to turnover associated with a change in the majority shareholder and the Board of Directors. Thus, these former employees are essential to Defendant's attempt to marshal evidence in defense of Plaintiff's claims. In Polycast Technology Corp. v. Uniroyal, Inc., 129 F.R.D. 621, 623 (S.D.N.Y. 1990), a case which permitted ex parte contact, the court articulated an exception to the general rule that former-employees can be contacted. The court noted that such contact can be prohibited with respect to former employees who "continue to personify the organization even after they have terminated their employment relationship. An example would be a managerial level employee involved in the underlying transaction [of the litigation] who is also conferring with the organization's lawyer in marshaling the evidence on its behalf." Id. The court further explained that an *ex parte* interview of such an employee without consent from his former employer is barred because the individual almost certainly became privy to a large amount of privileged information. Id.

Finally, it should be noted that Plaintiff presumably has no need to contact these former employees because he has not asked Defendant's counsel to contact these former employees so that he can interview them. In the event disclosure of the former employees' addresses is required, Defendants request that the Court impose restrictions on ex parte interviews that prevent the inadvertent dissemination of privileged material. See e.g., G-I Holdings v. Baron & Budd, 199 F.R.D. 529 (S.D.N.Y. 2001).

## Defendant's First Request for An Extension

Plaintiff's assessment of Defendant's First Request for an Extension to respond to its Requests mischaracterizes, and fails to fully articulate the factual background surrounding the request.

This matter was staffed and handled by the undersigned and her associate, Thomas McKinney, from the date of the Complaint's filing on September 10, 2007, until December 21, 2008, at

## KUDMAN TRACHTEN ALOE LLP

Hon. Gerard E. Lynch
March 27, 2008
Page 10

which time Mr. McKinney took an unexpected leave absence from the Firm to attend to familial obligations surrounding the birth of his child. While on leave, Mr. McKinney nevertheless attended to and served Defendant's requests for interrogatories and the production of documents on December 31, 2007. Due to his unexpected leave of absence, Mr. McKinney, who had previously been principally responsible for running the case with respect to witness interviews, client communications and other logistical items, was unable to attend to the case.

Plaintiff served their document requests and interrogatories ("Initial Requests") on December 28, 2007. After the new year, Ian Schaefer, another Proskauer associate, was assigned to the matter to replace Mr. McKinney. With little institutional knowledge of the case and Defendant's responses due on January 31, 2008, Mr. Schaefer reached out by telephone to Mr. Trachten on January 24, 2008 to request a thirty (30) day extension of time to respond to Plaintiff's Initial Requests. During that conversation, Mr. Schaefer requested that Mr. Trachten provide Defendant with the courtesy of granting a thirty (30) day extension to respond due to Mr. McKinney's unexpected absence and the resultant transition. This simple request would have made Defendant's responses due on March 3, 2008. Plaintiff's counsel indicated that he did not believe his client would be able to consent to such an extension, even under these exigent circumstances. True to his prediction, after conferring with his client, Plaintiff's counsel advised Mr. Schaefer on January 25 that Plaintiff would consent only to a twenty (20) day extension, making Defendants responses due February 20, 2008. Additionally, Plaintiff's counsel. advised that Plaintiff would need several additional days to produce their documents. Defendant immediately granted Plaintiff's request and was flexible with Plaintiff and at no time did Defendant object to a production that was, in fact, late. Plaintiff subsequently served its Requests for Documents on or about February 5, 2008.

With respect to Plaintiff's February 5, 2008 document production, it should be noted that Defendant at no time took issue with Plaintiff's representation that he is not in possession of any additional documents responsive to Defendant's Requests (notwithstanding that their production numbers less than two-hundred pages of documents, whereas Plaintiff has requested that Defendant search hundreds of thousands of electronic and hard-copy files for production).

**Defendant's Second Request for An Extension**

Plaintiff's counsel accurately reflects the substance of our conversation on February 19. As Mr. Trachten correctly points out in his letter, and per the above news reports, Take-Two was indeed "distracted" by the events leading up to the hostile bid of EA Sports to take over the Company. Plaintiff was unwilling to himself provide Defendant the courtesy of an additional extension.

On February 19, I spoke to this Court's clerk, and apprised the Court of our request for an extension of time. Subsequently the Clerk's office advised that per the practice rules of Your Honor, Defendant would necessarily need to file a formal motion in order for the Court to consider the extension request. After explaining broadly that our reasoning was based on confidential events surrounding an attempted takeover, I was told that Defendant could file a

# KUDMAN TRACHTEN ALOE LLP

Hon. Gerard E. Lynch
March 27, 2008
Page 11

motion under seal. However, Defendant would need to disclose as part of that motion the reason for requesting the delay. Given that the information regarding the attempted takeover was highly confidential and not subject to public disclosure at that time, Defendant could not make such a motion.[4]

**Interrogatory Answers**

Thereafter, given that the nature of the operating environment of Take-Two during the Relevant Discovery Period, Defendant's legal department continued to be understandably inundated, and remained unable to focus on providing defense counsel with additional information and documents to respond further to discovery requests .

Since providing objections and responses on or about February 22, 2008, we have been in discussions with key personnel at Defendant, and will soon be in a position to supplement responses to interrogatories in response to Plaintiff's objections..

**Document Request Response and Production**

Defendant's initial production was not only wholly appropriate, but also compliant with the obligations imposed by the Federal Rules of Civil Procedure.
Federal Rule of Civil Procedure 34(b)(i) provides that "a party who produces documents for inspection shall produce them as they are kept in the usual course of business *or* shall organize and label them to correspond wit the categories in the request." (emphasis added). To wit, Defendant not only produced documents both in the manner in which they were kept in the usual course, but the documents were further clearly labeled, as they had been originally by the client as part of its internal record keeping, to clearly provide for their identification and context of the documents provided.[5]
Notwithstanding the straightforward nature of this claim, Plaintiff has requested of Defendant, both in hard-copy and electronic copy, extensive documentation bearing on Judd's employment, his compensation, and his duties over the course of his employment from 2004 – 2007. In today's day and age, a technology company like Take-Two maintains few paper documents and Defendant continues to search diligently for responsive electronic documents. To put in context the universe of documents involved, Defendant estimates it will need to review approximately 3

---

[4] News of the tender offer became public only on or about February 24, 2008, days after the 2/22/08 response date to the First Set of Interrogatories and Requests for Documents.  [See Exhibit I, 2/24/08 EA Press Release; 2/25/08 WSJ article discussing same].

[5] Defendant produced the following, clearly labeled documents: (i) Samuel Judd's personnel file, including photocopied tabs and inserts as maintained by Defendant [Responsive to Request No. 12]; (ii) organizational charts of Take-Two, as filed on 4/25/07, 5/31/07, and 8/17/07 [Responsive to Requests 13; 20; 21]; (iii) "Work Charts" illustrating the organizational structure of Take-Two divisions 2K, 2K Sports, GlobalStar, JOAG, Joytech, Rockstar, Take2, and Take2 Int'l [Responsive to Requests 13; 20; 21]; and (iv) a Bonus Compensation Report, redacting the names of other executives pending the execution of a Stipulation and Order of Confidentiality.

# KUDMAN TRACHTEN ALOE LLP

Hon. Gerard E. Lynch
March 27, 2008
Page 12

million pages of potentially responsive emails, generated by a list of search terms proposed by Defendant in its Response to Plaintiff's First Request for the Production of Documents. This amount of electronic documents takes significant time and resources to review and produce. Defendant has been and continues to review these documents, and anticipates producing non-privileged responsive documents on a rolling basis.

Furthermore, Plaintiff has requested the production of documents which Defendant considers to be worthy of protection by way of a Stipulation and Order of Confidentiality (see below). Defendant has assembled and continues to search for such documents, and Defendant will produce them in accordance with, and upon so ordering by the Court.

## Proposal and Negotiation of Confidentiality Agreement

On February 22, 2008, Defendant served upon Plaintiff (in conjunction with its Responses to Plaintiff's First Request for the Production of Documents and First Set of Interrogatories) its proposed Stipulation and Order of Confidentiality for Plaintiff's consideration. The proposed agreement contained boilerplate language, protecting against disclosure of confidential business and personal information Plaintiff sought of the parties and non-parties implicated in this action. The proposed Stipulation was offered in a good faith effort to produce responsive documents, provided they were afforded the requisite protection of confidentiality and non-disclosure. It was nearly two (2) weeks later, that Plaintiff offered its counterproposals to our standard agreement. More significant than the delay in transmission of the counterproposals is the substance contained therein. Specifically, the purpose of entering such Confidentiality Agreements is to, by advance agreement, carve out material that is stipulated to be confidential. It is became clear from Plaintiff's counsel's comments and suggested revisions that all Plaintiff was prepared to agree to was, in essence, a procedure for future discovery disputes  In effect, Plaintiff's counsel proposed essentially what the Rules permit by motion. To be sure, this was not Defendant's intention in offering this Agreement, nor does Defendant believe it has accomplished the underlying goals and purposes of entering into a Confidentiality Agreement. That said, the parties remain close to reaching an Agreement on the terms provided in Exhibit H, and will thereafter produce responsive, confidential documents in accordance with the terms of the Agreement.

## RECOMMENDATION

We trust that the above will assist the Court in helping the parties sort through these matters. While Defendant appreciates the "frustration" which Plaintiff writes, Defendant has not intentionally withheld, or delayed production of relevant materials necessary to the prosecution and defense of this claim – but instead, based on the exigent circumstances described above, has necessarily been forced to divert its limited resources to the attention of the continuing viability of Take-Two as a corporate entity. While Plaintiff's counsel failed to appreciate the gravity of Defendant's situation, we trust that this Court certainly would understand why discovery has been naturally, and unfortunately delayed until this point.

# KUDMAN TRACHTEN ALOE LLP

Hon. Gerard E. Lynch
March 27, 2008
Page 13

Inasmuch as Plaintiff has requested judicial intervention in order to obtain all materials he feels are required to go forward with his claim, Defendant respectfully requests that the all deadlines in the discovery schedule be extend by 3 months. This additional time will allow Defendant to re-shift and re-prioritize its focus, and give this matter the attention it unquestionably deserves. Finally, given the confidential and private nature of many of the items currently faced by Take-Two (articulated supra), many of which are of a non-public nature, we also respectfully request that this physical letter not be "endorsed" by the Court so as to avoid inadvertent public disclosure through the Electronic Case Filing System.

## III. Plaintiff's Response to Defendant's Section

Plaintiff replies to the above submission of the defendant as follows:

- We find it remarkable that although the defendant's counsel could not find the time to confer about discovery issues this week, when pressed to give this matter a modicum of priority, they managed to find time to put together in a single day the above six and a half page, single spaced, insert.

- If Take-Two's management is of the view that giving attention to hostile takeover bids takes priority over this case, it ought to have timely raised the issue by an application to the Court rather than arrogantly and unilaterally flouting both the letter and spirit of the rules governing discovery in this case. Also, since February 19, no one indicated to us (until we received the above submission) that continuing delays were attributable to continuing takeover distractions. In any event, we submit that Mr. Judd, a former executive of Take-Two who has been out of work nearly nine months and who is seeking to recover from Take-Two in excess of $1.4 million due him, does not owe Take-Two the courtesy of voluntarily subordinating progress in resolving his claim to Take-Two's management's hostile takeover distractions.

- Very troublingly, the defendant's explanation for its unilateral refusal to abide by Local Rule 26.3's definition of "Identify" and its above bid to try to regulate (if not monopolize) investigative access to relevant facts known to its former executives reflect (at best) a disturbing ignorance of the well settled governing law. Indeed we submit that it is inexcusable that the defendant would offer argument concerning rules governing counsel *ex parte* communications with the former executives of a represented adverse party without finding and candidly citing *Muriel Siebert & Co., Inc. v. Intuit Inc.*, 8 N.Y.3d 506, 836 N.Y.S.2d 527 (2007), which set forth a clear holding:

> The policy reasons articulated in *Nieseg [v. Team I,* 76 N.Y.2d 363] concerning the importance of informal discovery underlie our holding here that, so long as measures are taken to steer clear of privileged or

# KUDMAN TRACHTEN ALOE LLP

Hon. Gerard E. Lynch
March 27, 2008
Page 14

confidential information, adversary counsel may conduct ex parte interviews of an opposing party's former employee. 8 N.Y.3d at 511.

We point out that the *Intuit* case involved *ex parte* communications with Siebert's former Executive Vice President/Chief Operating Officer who "was both an important participant in the events at issue in the Intuit lawsuit and a member of Siebert's 'litigation team' after the lawsuit began." The Court also found to be sufficient measures that Intuit's counsel "properly advised [the former executive] of their representation and interest in the litigation and directed [the former executive] to avoid disclosing privileged or confidential information."

Had the defendant's attorneys only timely responded to our repeated invitations to confer about its refusal to abide by the disclosure rule, we would have months ago understood that we needed to disabuse them of their apparently uniformed view of the law.

- Upon our perusal of the defendant's above submission, we see nothing that colorably justifies its request that it be protected from public disclosure of this letter. The request suggests that the defendant has a very outsized sense of entitlement to keep secret that for which the law does not afford secrecy protection. We view this request as vindicating our insistence on a form of confidentiality stipulation that gives temporary but no presumptive weight to the defendant's view of what information warrants secrecy.[6]

---

[6] See *Chambers v. Capital Cities/ABC*, 157 F.R.D. 3 (S.D.N.Y. 1994), holding that a protective order before proof of confidentiality is a proper and effective device for expediting discovery when protection is given temporarily and made effective only while arguments concerning continuing confidentiality are resolved. We find no support in the Rules or case law for Ms. McKenna's assertion that the general purpose of entering confidentiality stipulations "is to, by advance agreement, carve out material that is stipulated to be confidential," as distinct from expediting discovery without prejudice to any party's contentions about whether there exists good cause for limiting public disclosure.

Moreover, the defendant is hardly entitled as a matter of right even to judicially sanctioned temporary protection, which the plaintiff has offered. We note the following judicial observation:

The Court is constrained to note a trend among counsel in cases pending before this Court. Litigants are seeking protective orders with increasing regularity. Since most often the parties will consent to such non-disclosure, the parties seek only the Court's imprimatur to their agreement and do not come forward with any showing of good cause. However, when, as here, consent is unavailing, the movant seems unwilling or unable to make the required showing -- appearing to believe that a protective order should be available for the asking. The law is to the contrary. Parties should not assume that the court will accede to a protective order because no substantial harm to the party opposing the application can be shown; the requirements of Rule 26 must be satisfied by the movant in each case.

*Nestle Foods Corp. v. Aetna Casualty and Surety Co.*, 129 F.R.D. 483, 485, n.4 (D.N.J. 1990).

**KUDMAN TRACHTEN ALOE LLP**

Hon. Gerard E. Lynch
March 27, 2008
Page 15

Respectfully submitted,

Gary Trachten (GT 5480)
Kudman Trachten Aloe LLP
*Attorney for Plaintiff*

Kathleen M. McKenna
Proskauer Rose LLP
*Attorney for Defendant*

# KUDMAN TRACHTEN ALOE LLP
### ATTORNEYS AT LAW

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4400
NEW YORK, NY 10118
(212) 868-1010

TELECOPIER (212) 868-0013
www.kudmanlaw.com

PAUL H. ALOE†
STUART R. KUDMAN*
GARY TRACHTEN††

MICHELLE S. BABBITT*

THOMAS M. FURTH**

MATTHEW H. COHEN*
WILLIAM E. HAMMOND**
JOHN S.LEGO***
ALISA L. SILVERSTEIN*

*ADMITTED IN NY & NJ
**ADMITTED IN NY ONLY
***ADMITTED IN NY & CA
†ADMITTED IN NY, NJ & PA
††ADMITTED IN NY, NJ, CT & GA

March 20, 2008

**By Email and Regular Mail:**

Kathleen M. McKenna, Esq.
Proskauer Rose LLP
1585 Broadway
New York, NY 10036

Re:    **Samuel A. Judd v. Take-Two Interactive Software, Inc.**
       **07 Civ. 7932 (GEL)**
       <u>**Our File No. 2923.01**</u>

Dear Kathleen:

Since we have, or should imminently have, a confidentiality stipulation in place, we expect that additional documents will be forthcoming fairly immediately. In producing such additional documents, please be sure to adhere to the FRCP 34(b)(2)(E)(1)'s requirement that they be organized and labeled to correspond with the categories in the request, unless produced as they are kept in the ordinary of business. Please also send a schedule, according to your assigned "bates stamp" numbers, of which of the produced documents were produced in response to which numbered request.

We await the production that is to be facilitated by the confidentiality stipulation in order to more knowledgeably engage with you about document discovery deficiencies. However, we need not wait any longer to at least begin addressing interrogatory responses. We find it extraordinary to receive a nearly total refusal to provide any identification of persons having relevant knowledge because of the defendant's contentions that common, every, day, easily defined words (like "executive" or "participate") are somehow too "vague" to allow for an answer. While I strive to be collegial with my adversaries, I think I would be inadequately communicating with you if I did not indicate that I regard the stated objections as classic manifestations of pettifoggery. (I think that you well know that when we use a phrase like "generally", we mean "widely", or as a class, as distinct from being in regard to particular or individual circumstances. Also, I am confident that you well understood from context that the use of the term "generally" in Interrogatory #2 was a clerical mistake and that the intended term there was "in particular".) In any event, even if the outer limits of the scope of some terms may

**KUDMAN TRACHTEN ALOE LLP**

Kathleen M. Mckenna, Esq.
March 20, 2008
Page 2

not be defined with certainty, there is certainly a great deal of information that is plainly known by your client that clearly falls within the scope of each and every interrogatory. Such plainly sought information should have timely been provided.

I noticed that in one interrogatory objection you objected on the basis of a specified word being "vague" when the specified word does not even appear in the interrogatory!

Moreover, with respect to the precious little (almost none) information that defendant provided, answering only 2 of the 23 interrogatories propounded, you did not comply with the requirements in Local Rule 26.3's uniform definitions. There is no reason for you not to immediately cure that.

We also ask that you review all objections – particularly "general objections" – with an eye toward whether any responsive documents are being withheld, or efforts to locate responsive documents are being withheld, pursuant to the objections. We are entitled to know the extent to which stated objections are truly in operation, and that is not information that should be obfuscated by "general objections" or responses that are vague about whether notwithstanding the objections *all* responsive documents are being produced.

We do not wish to any longer delay conferring in an effort to resolve discovery differences. We propose that we meet in our offices on this coming Wednesday afternoon or Thursday morning (March 26 or 27) for that purpose. While we expect that we will by then have had a couple of days to review also the designated-as-confidential documents to be produced, we wish to go forward with a conference in any event. Unless you or one of your associates on the case commits by 4:30 p.m. tomorrow to participate in such a conference, we intend to apply to Judge Lynch for relief. Additionally, unless the conference yields an agreement memorialized by next Friday (March 28) that sets a deadline for full compliance therewith by Thursday (April 3), we intend to apply to Judge Lynch for relief. We will also be looking for your cooperation in resetting the court ordered discovery schedule.

There comes a time when extending courtesies and patiently awaiting opposing counsel's cooperation in making appropriate efforts to work out discovery differences risks prejudicing a client's position in the litigation. Our patience is worn. It is time for you and your client to give this matter priority focus.

Very truly yours,

Gary Trachten

# KUDMAN TRACHTEN ALOE LLP
### ATTORNEYS AT LAW

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4400
NEW YORK, NY 10118
(212) 868-1010

TELECOPIER (212) 868-0013
www.kudmanlaw.com

PAUL H. ALOE†
STUART R. KUDMAN*
GARY TRACHTEN††

MICHELLE S. BABBITT*

THOMAS M. FURTH**

MATTHEW H. COHEN*
WILLIAM E. HAMMOND**
JOHN S.LEGO***
ALISA L. SILVERSTEIN*

*ADMITTED IN NY & NJ
**ADMITTED IN NY ONLY
***ADMITTED IN NY & CA
†ADMITTED IN NY, NJ & PA
††ADMITTED IN NY, NJ, CT & GA

December 18, 2007

**VIA FAX AND REGULAR MAIL**
Thomas A. McKinney, Esq.
Proskauer Rose LLP
1585 Broadway
New York, NY 10036

      Re:    **Samuel A. Judd v. Take-Two Interactive Software, Inc.**
              **07 Civ. 7932 (GEL)**
              **Our File No. 2923.01**

Dear Tom:

      We are in receipt of Take-Two's Initial Disclosures and find them deficient. Rule 26(a)(1)(A) requires the disclosure of the "address and telephone number of each individual likely to have discoverable information…". The Rule does not provide for the alternative of your offering or requiring that your firm serve as a contact conduit – an alternative that encroaches on our work product interests. It is evident from your response that you have telephone and address information for the persons you listed, so we will expect you to promptly and fully comply with the Rule in this regard. (Our response was complete to the full extent of Mr. Judd's knowledge, except with respect to current employees of Take-Two whose telephone numbers and addresses are known to Take-Two.)

      We also note that the Initial Disclosures identify the subject of the discoverable information for only certain named persons, but not others. Moreover, the subjects noted, (i) compensation and (ii) contract-related issues, make little sense since all of Judd's complaint is contract based. We cannot tell whether you intend by "contract-related issues" to include information concerning the bonus claim and we seek clarification in this regard. We acknowledge that we initially failed to identify the subjects of the discoverable information, and we enclose our Amended and Supplemental Initial Disclosure to identify as to each individual either the (i) bonus claim or the (ii) Good Reason termination claim, or both. These identifications more clearly differentiate between the subjects of the information than does yours, which we regard as ambiguous. We request that you similarly clarify the subject of the

## KUDMAN TRACHTEN ALOE LLP

December 19, 2007
Page 2


information, and also indicate who is likely to have discoverable information about which of the affirmative defenses that Take-Two has pled.

If you for any reason intend to not comply with the foregoing request within the next few days, please so advise. In such event, we will confer in good faith about resolving any differences that we have concerning the matter.

Very truly yours,

Alisa L. Silverstein


Enclosure

Exhibit C

## Gary Trachten

| | |
|---|---|
| **From:** | Gary Trachten |
| **Sent:** | Monday, December 31, 2007 4:40 PM |
| **To:** | Kathleen M. McKenna (KMcKenna@Proskauer.com) |
| **Cc:** | Alisa Silverstein |
| **Subject:** | Judd v Take-Two |

Hello Kathleen -

Attached please find another copy of the set of the discovery demands that we served by hand on Friday.

Also, unless there was a communication to Alisa Silverstein's attention since Friday, we still await a response to her 12/18 letter to Tom McKinney about the deficiencies in Take-Two's Initial Disclosures.  Please give that your prompt attention.

Have a happy New Year.

**Gary Trachten**
Kudman Trachten Aloe LLP
Attorneys at Law
350 Fifth Avenue - Suite 4400
New York, NY 10118
212.868.1010
Fax 212.868.0013

This email is meant to be a confidential communication to one or more intended recipients.  It may contain and/or attach information that is protected by the attorney-client privilege or by another rule of law that protects confidential information.  If it appears to you that you are not an intended recipient, you are to the extent provided by law prohibited from using, copying or disclosing its contents in any way.  If you have reason to believe that you received this email in error, please immediately advise Kudman Trachten Aloe LLP by calling 212.868.1010 or by replying *only* to the sender of this email.  Thank you for your cooperation.

**IRS CIRCULAR 230 DISCLAIMER**:  Any tax advice contained in this e-mail is not intended to be used, and cannot be used by any taxpayer, for the purpose of avoiding Federal tax penalties that may be imposed on the taxpayer.  Further, to the extent any tax advice contained in this e-mail may have been written to support the promotion or marketing of the transactions or matters discussed in this e-mail, every taxpayer should seek advice based on such taxpayer's particular circumstances from an independent tax advisor.

Exhibit D



# Exhibit *E*
## to Declaration of
## Gary Trachten,
## Dated *May 1, 2008.*

Exhibit E



# Exhibit *F*
## to Declaration of
## Gary Trachten,
## Dated *May 1, 2008.*

Exhibit F

## Gary Trachten

| | |
|---|---|
| **From:** | Gary Trachten |
| **Sent:** | Tuesday, February 26, 2008 1:42 PM |
| **To:** | 'Kathleen M. McKenna (KMcKenna@Proskauer.com)' |
| **Cc:** | Alisa Silverstein |
| **Subject:** | Judd v Take Two |
| **Contacts:** | Kathleen M. McKenna |

Kathleen -

We received your client's slightly late discovery responses, and we regard them as woefully deficient. We recently heard of the Electronic Arts bid, so I now have some insight into how your client may have been distracted from the discovery task that was at the same time at hand.

We want to soon move forward to address with you (in the first instance) the deficiencies an effort to resolve what we can so that we avoid needlessly burdening the Court (and ourselves) with discovery motion practice that is more cumbersome than it should be. However, noting that you had sought a few weeks extension only a few days before the responses were due, I am hopeful that you already have in mind some supplementation that your client is or soon will be prepared to make. Please immediately let me know if that is so, and if so, what supplementation you contemplate. Your doing so might help narrow the issues that will need to be resolved.

I am out of the office this Friday through next Tuesday. I would like to confer on the discovery issues this Thursday afternoon. Let me know whether you are available then, and if not, let me know your availability for after Tuesday next week.

Thanks,

**Gary Trachten**
Kudman Trachten Aloe LLP
Attorneys at Law
350 Fifth Avenue - Suite 4400
New York, NY 10118
212.868.1010
Fax 212.868.0013

This email is meant to be a confidential communication to one or more intended recipients. It may contain and/or attach information that is protected by the attorney-client privilege or by another rule of law that protects confidential information. If it appears to you that you are not an intended recipient, you are to the extent provided by law prohibited from using, copying or disclosing its contents in any way. If you have reason to believe that you received this email in error, please immediately advise Kudman Trachten Aloe LLP by calling 212.868.1010 or by replying *only* to the sender of this email. Thank you for your cooperation.

**IRS CIRCULAR 230 DISCLAIMER:** Any tax advice contained in this e-mail is not intended to be used, and cannot be used by any taxpayer, for the purpose of avoiding Federal tax penalties that may be imposed on the taxpayer. Further, to the extent any tax advice contained in this e-mail may have been written to support the promotion or marketing of the transactions or matters discussed in this e-mail, every taxpayer should seek advice based on such taxpayer's particular circumstances from an independent tax advisor.

3/19/2008