Exhibit D

Gary Trachten (GT5480)
Alisa L. Silverstein (AS2926)
**KUDMAN TRACHTEN ALOE LLP**
350 Fifth Avenue, Suite 4400
New York, New York 10118
(212) 868-1010
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SAMUEL A. JUDD,

                        Plaintiff,

   -against-

TAKE-TWO INTERACTIVE SOFTWARE, INC.,

                        Defendant.
-------------------------------------------------------------X

ECF Case
07 Civ. 7932 (GEL)(HP)

**PLAINTIFF'S FIRST
REQUEST FOR PRODUCTION**

The plaintiff, Samuel A. Judd ("Judd"), by his attorneys, Kudman Trachten Aloe LLP, pursuant to Rule 34 of the Federal Rules of Civil Procedure, requests that the defendant produce the documents and things set forth below, to the extent within its possession, custody or control, for inspection and copying at the offices of Kudman Trachten Aloe LLP, 350 Fifth Avenue, Suite 4400, New York, New York 10118, at 10:00 a.m. on January 31, 2008. The defendant's response to this request shall be due within thirty days after the service of this request.

**PLEASE TAKE NOTICE** that, under applicable law, documents in the possession, custody or control of current and former employees of the defendant are within the possession, custody or control of the defendant if, and to the extent, that the defendant has legal or practical control over such current and former employees in connection with an ability to obtain such documents, such as (by way of examples) by reason of any cooperation agreements, such

persons' receiving economic benefits from the defendant, or where there are other indicia of control.

Pursuant to the clear and express provisions of Fed.R.Civ.P. 34(b)(2)(B), effective December 1, 2007, for *each* item or category, the response must *either* state that inspection and related activities will be permitted *as requested or* state an objection, *including the reasons*. The response must be signed so as to incorporate the certification set forth in Fed.R.Civ.P. 26(g).

## DEFINITIONS

The Uniform Definition in Discovery Requests set forth in Rule 26.3 of the Local Civil Rules of this Court shall govern these requests. The following definitions are also hereby made applicable:

1. "Judd" means the plaintiff Samuel A. Judd.

2. "Take-Two" means the defendant Take-Two Interactive Software, Inc. and any Affiliate of Take-Two, as defined below.

3. "Affiliate of Take-Two" means any person or entity who or that, as a legal or practical matter, controls Take-Two; is controlled by Take-Two; is controlled by a person or entity that controls Take-Two; controls or is controlled by any person or entity that is an Affiliate of Take-Two; or is, or administers, any employee benefit Plan sponsored by Take-Two (including all of its affiliated entities).

4. The term "Employment Agreement" refers to and means the written Employment Agreement between the parties, dated as of July 30, 2004.

5. The phrase "quantitative and qualitative performance targets," as used herein, shall have the meaning that Take-Two gives to that phrase as used in Section 3(b) of the Employment Agreement.

6. The term "Good Reason Notice Letter" means the letter dated May 29, 2007 from

2

Gary Trachten, Esq., counsel for Judd, to Take-Two, attention Ben Feder.

7. The term "Take-Two-Designated Knowledgeable Persons" means those persons whom Take-Two has listed in its Initial Disclosures as persons who "may have knowledge relevant to its defenses in this case".

## REQUESTS FOR DOCUMENTS

1. All documents (including, but not limited to, all contracts, correspondence, records and/or logs of oral communications, etc.) that concern any agreements or arrangements made by Take-Two since August 1, 2004 with anyone who is now a former executive employee or former human resource department employee of Take-Two (A) whereby such former employee has promised or covenanted to abide by any of the conduct set forth in (i) through (v) below, or (B) whereby such former employee's entitlement to obtain or retain any past, current or future payments or benefits from Take-Two is conditioned on such employee's abiding by any of the conduct set forth in (i) through (v) below:

    (i) providing post-employment cooperation with Take-Two;

    (ii) providing post-employment services to Take-Two;

    (iii) refraining from disparaging Take-Two or any persons who were at any time associated with Take-Two;

    (iv) keeping confidential or refraining from disclosing or using information concerning any business affairs of Take-Two; or

    (v) refraining from communicating with, cooperating with, or assisting anyone concerning any matter.

For the avoidance of doubt, this request extends (without limitation) to all termination, separation or indemnification agreements with its executive and human resources department level employees entered into since August 1, 2004, except to the extent that none of the conduct described in (i) through (v) above is the subject of any promise, term or condition of such

3

agreement.

2. For each fiscal year (including any part thereof) during which Take-Two employed Judd, all documents concerning any actual "quantitative and qualitative performance targets" that were stated, designated or proposed (by anyone) as criteria for consideration in connection with prospective bonus compensation to Judd, if any, that were in fact mutually agreed upon by Judd and Take-Two. For the avoidance of doubt, this request extends (without limitation) to all documents that concern any mutual agreements by Judd and Take-Two with respect to "quantitative and qualitative performance targets" for each and any fiscal year.

3. For each fiscal year (including any part thereof) during which Take-Two employed Judd, all documents concerning any proposals, plans or suggestions made (whether by Take-Two or Judd or any third party, and regardless of whether ever communicated to Judd) concerning any "qualitative and quantitative performance targets" that were stated, designated or proposed (by anyone) as criteria for consideration in connection with prospective bonus compensation to Judd that (for whatever reason) did not come to be mutually agreed upon by Judd and Take-Two.

4. If for any fiscal year(s), Judd and Take-Two did not mutually agree on "quantitative and qualitative performance targets", all documents that concern the reason(s) for the absence of such mutual agreement. For the avoidance of doubt, this request extends (without limitation) to documents concerning why (if at all) any efforts to, or processes for, obtaining mutual agreements failed to occur or were abandoned or aborted, regardless of at whose initiation, initiative or failure to act.

5. All documents that concern, and/or were considered by Take-Two in connection with (a) Take-Two's alleged determination when made that Judd was not entitled to a bonus in or

for 2005 and 2006, and (b) any (if any) determination that Take-Two made concerning Judd's entitlement to a bonus in or for 2007. For the avoidance of doubt, to the extent that (if at all) such determination(s) concerning Judd's non-entitlement to a bonus was (or were) made based (in whole or in part) on his being a part of a group or class of employees who were determined not to be entitled to a bonus or based on one or more general decisions having broad application, this request extends to documents that concern and/or were considered in connection with those determination(s) and decision(s).

6. All written employment compensation agreements with, "hiring letters" to, and memoranda advising of compensation terms provided to, any persons who were executive level employees of Take-Two during all or any part of Take-Two's 2002-2007 fiscal years. For the avoidance of doubt, this Request extends (without limitation) to responsive documents regardless of when such agreements were originally entered into or when the documents were prepared.

7. All documents that concern any communications between (a) any and all persons who were executive employees of Take-Two for any part of fiscal years 2004, 2005, 2006 or 2007 (regardless of whether such persons remain so employed) or any persons acting on their behalf (including legal counsel), and (b) Take-Two or anyone acting on its behalf (including legal counsel) concerning (y) whether or to what extent any or all such executive employee(s) claimed or asserted that he, she or they was, were or are entitled to, or deserving of, bonus compensation with respect to fiscal years 2004, 2005, 2006 and/or 2007, and (z) the resolution of disputes of disagreements concerning whether or to what extent any or all such employees were or are entitled to, or deserving of, a bonus for any of those fiscal years.

8. All documents that concern Take-Two's past or current perception of the practical and legal significance or effect of (a) the fact of any "target bonus" (or similar designation) being

5

established for any Take-Two employee at any time from fiscal year 2000 through the present, and/or (b) the amount of any such target bonus.

        9.      All documents that concern Take-Two's bonus policies and practices with respect to executive level employees for the period of fiscal years 2003-2007, including, without limitation, by way of examples:

- All agendas, notices, minutes, summaries, logs, contemporaneous handwritten notes, memos, emails, etc. concerning the facts and/or content of all meetings of the Take-Two Compensation Committee and Board (with respect to meetings in which any employee compensation issues were discussed or considered) from the period of January 1, 2003 until the present;

- All reports and written materials reviewed by or submitted to the Compensation Committee and/or Board in connection with any discussion of, or consideration given to, bonus compensation or other payments or benefit grants that were considered or awarded because (in whole or in part) of a non-payment or low payment of a cash bonus;

- All documents concerning any follow-up communications or actions to any compensation committee or Board consideration or discussion of any bonus compensation issues.

- All documents constituting a statement or summary of Take-Two's bonus plan(s) and /or policies from January 1, 2003 until the present.

- Documents reflecting the fact and/or amount of all compensation other than salary that was paid or awarded (including in the form of stock options, restricted stock, etc.);

- All documents that concern any distinction (if any) in Take-Two's bonus policy and practice between executives who were parties to (a) written contracts that recited that they were "entitled to receive" a cash bonus, and (b) written contracts that recited that they were "eligible" to receive a cash bonus, (c) written contracts that otherwise referenced bonus compensation; and (d) no such contracts;

- All documents that concern suggestions or recommendations (whether made internally or by third parties) or written or oral communications regarding to what extent (if at all) bonuses should be awarded or paid to (a) Take-Two executives generally, and (b) particular executives, specifically. This example includes (without limitation) documents reflecting general and specific criteria considered or employed and all calculations that were made;

- All documents that concern any suggested, considered or actual preliminary or final calculations made in connection with all bonuses that were awarded and/or paid;

- All minutes, summaries, logs, handwritten notes, emails and other documents that concern the fact or content of all meetings of Take-Two senior executives, human resources department personnel, or any grouping of its directors and/or officers, concerning payments of bonuses;

- All documents that concern or describe how Take-Two's bonus policies, plans or practices were designed to be implemented and were in fact implemented, including all internal correspondence, correspondence with any external compensation advisers (if any) and documents that concern the fact or content of oral communications regarding such designs and related documents; and

- All documents that concern any communication regarding any suggestion, recommendation, or proposal that Take-Two modify, eliminate, amend or suspend any of its bonus policies or practices, and any documents that concern communications regarding the implementation of any modification, elimination, amendment or suspension of any of its bonus policies or practices.

- All documents that address the manner in which the stated "target bonus" for each employee (who has or had a "target bonus" assigned to him or her, by contract or otherwise) is given meaning (if at all) in Take-Two's making bonus determinations and calculations for each such employee, and how target bonuses are used and/or incorporated in bonus determinations and calculations generally.

10. All documents concerning Judd's ever having made any inquiry, comment or complaint concerning his past or then-anticipated bonus compensation.

11. All documents concerning any communications from fiscal year 2000 to present from Take-Two to its executive employees, or any of them, concerning bonus any past or then-anticipated bonus compensation.

12. All documents that concern Take-Two's evaluations, assessments and/or appraisals of Judd's work performance (collectively "Perceptions"), including (without limitation) all documents that at any time informed such Perceptions, and all documents that reflect the fact or content of written or oral communications discussing or setting forth such Perceptions.

7

13. All (a) organization charts, drafts of suggested organizational charts and memoranda that concern actual or prospective organizational structure for Take-Two, and/or for any section, department, or division of Take-Two, for the period of November 2003 through the present, and (b) all documents (including cover letter and emails) that contain references to or comments regarding any such charts or memoranda.

14. All documents that contain any information concerning the fact or content of any oral or written communications between Ben Feder and Judd.

15. All documents that contain any information concerning the fact or content of any communications to, from or among any agents, employees, directors and/or officers of Take-Two and/or of Zelnick Media, and/or to from as among former employees of Take-Two, which communications occurred during the period from February 1, 2007, through the present, to the extent such communications concerned the historical, then-current, anticipated, planned and/or prospective roles of Judd in Take-Two (including for any period after July 30, 2007) as they regard Judd's areas of responsibility, level of authority, formal and informal reporting relationships, duties, and position within Take-Two.

16. All documents that contain information concerning Judd's role (in terms of duties, reporting relationship, position, responsibilities or authority) in Take-Two in May and June of 2007 with regard to:

    a.    business planning;

    b.    strategic planning;

    c.    procurement;

    d.    information technology; and

    e.    insurance and/or risk management.

17. All documents that concern Take-Two's communications, whether internally or with outside persons, that arose from its receipt of the Good Reason Notice Letter or were in reaction to or otherwise concerned that letter (including documents reflecting the internal transmittals of the Good Reason Notice Letter or copies thereof).

18. All documents that concern the conduct (including, without limitation, investigative conduct, if any) engaged in by Take-Two in connection with the Good Reason Notice Letter and/or its receipt thereof.

19. With respect to each and every one of the Take-Two-Designated Knowledgeable Persons who is neither a current executive level employee, a Take-Two director, nor Judd, all documents that concern (a) whether each such person has retained Proskauer Rose LLP as his or her attorney, (b) the manner in which that attorney-client relationship came about (*e.g.*, whether by initiation of the client, suggestion or solicitation of Proskauer Rose LLP or otherwise); (c) the terms of the retainer (including, *e.g.*, whether Take-Two is bearing the expense of the legal fees in connection with such relationship; and (d) the point in time when the attorney client relationship had its inception to the knowledge of such person. For the avoidance of doubt, this request extends (without limitation) to responsive engagement letters and retainer agreements, pre-retainer emails with the persons at issue (including with Take-Two's counsel), and post-retainer correspondence that is responsive hereto, and any written consents by such Persons to Take-Two's payment of their legal fees.

20. All organization charts and drafts of organizational charts for Take-Two, and/or any division thereof, that were at any time since January 1, 2004 in effect or proposed, together with all documents that concern the effective dates or dates proposed for the effectiveness of such charts.

21. To the extent not to be produced by Take-Two in response to Request no. 15 above, all notices, agendas, summaries, transcripts, minutes, logs, and correspondence concerning any meetings which included, or as to which there were plans to include, any discussion of any proposed or actual changes in the roles, authorities and responsibilities of Take-Two executive personnel from February 1, 2007 through the present. For the avoidance of doubt this request extends (without limitation) to responsive documents regardless of whether the changes and/or proposed changes related to proposed or actual restructuring, reorganizing, or addressing the particular perceived suitabilities of certain executives for certain roles and/or areas of responsibility. This request extends to any meetings of Take-Two's Board and the committees of the Board as well as to meetings of Take-Two officers, executives and/or human resources department personnel.

22. All documents for the period from January 1, 2004, to until the present, concerning the position(s) and/or person(s) having executive level responsibility in each of the following areas of Take-Two's business, and any changes thereto:

    (a)    Information technology (other than as the term concerns solely software that Take-Two develops and sells as products in the market);

    (b)    Procurement or purchasing;

    (c)    Insurance;

    (d)    Strategic planning;

    (e)    Risk management; and

    (f)    Business planning.

For the avoidance of doubt, this request extends (without limitation) to memoranda, correspondence, emails, etc. to persons and/or files that reflect such changes even if the documents do not characterize the changes as such. By way of example, an email that assigns

responsibility that someone did not previously have will be responsive to this request even if the email does not explicitly refer to or describe the assignment as a change.

23. The job descriptions and other documents, including, without limitation, *e.g.*, hiring letters, employment contracts, post-employment reference letters, business cards showing titles and/or departments, performance appraisals, and similar documents that concern the job responsibilities, authorities, positions, and status in connection with their employment by Take-Two, of each and every one of the "Take-Two-Designated Knowledgeable Persons," and of David Messenger, Todd Emmel, Robert Flug, Barbara Kaczynski, Steve Tisch, Oliver Grace, Jr., Mark Sanders Lewis, Grover Brown, John Levy, Michael Malone and Ken Selterman for the period of 2004 until the present.

24. Where substantially complete information concerning the job responsibilities, authorities, positions and status of any of the individuals with respect to whom documents are sought in Request no. 23 is not contained in documents sought and/or produced with respect to any such individual, but it is reflected in other existing documents (such as memoranda and emails assigning responsibility, employee work product, etc.), all documents that concern each of such persons, job responsibilities, authorities, positions and status in connection with their employment (if any) by Take-Two.

25. All documents concerning any communications since May 30, 2007 between Take-Two or any of persons acting on its behalf, and any former employee of Take-Two or any representative of such former employee, concerning such former employee's post-employment duties to Take-Two or concerning such employee's interests or possible interests in connection with its continuing relationship with Take-Two.

26. To the extent that any executive employee was, by reason of a policy, plan or contract, eligible for or entitled to bonus compensation (whether or not discretionary) that was tied (in whole or in part) to stated quantitative and/or qualitative performance targets, all documents that concern each every of such employee's performance target for that period.

27. All documents that concern Take-Two's contention, as set forth in its attorney's June 29, 2007 letter to Judd's attorney, that economic and business challenges that Take-Two has faced over the past few years have "prompted the Company to recognize its business operations; a process which involves down-sizing, relocation, and restructuring." For the avoidance of doubt, this request seeks all documents concerning planning for and implementation of such reorganization.

28. All documents that concern the fact, and the reasons for why, no targets were agreed upon for fiscal years 2006 and 2007, as contended by Take-Two in its attorney's June 29, 2007 letter to Judd's attorney.

29. All documents concerning Take-Two's document retention policies and practices with the respect to the period of July 2004 through the present.

30. To the extent not produced pursuant to the above requests, all documents referred to in Take-Two's Initial Disclosures refer to Disclosure Request 26(a)(1)(B).

Dated: New York, New York
December 28, 2007

**KUDMAN TRACHTEN ALOE LLP**
*Attorneys for Plaintiff*

By: _____
Gary Trachten (GT5480)
350 Fifth Avenue, Suite 4400
New York, New York 10118
(212) 868-1010